**Lansing, Michigan**

# Opinion

Chief Justice:          Justices:

Robert P. Young, Jr.   Michael F. Cavanagh
                        Marilyn Kelly
                        Stephen J. Markman
                        Diane M. Hathaway
                        Mary Beth Kelly
                        Brian K. Zahra

FILED JULY 26, 2011

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant/Cross-
        Appellee,

v                               No. 141695

EDWARD MICHAEL KOWALSKI,

        Defendant-Appellee/Cross-
        Appellant.

BEFORE THE ENTIRE BENCH

MARY BETH KELLY, J.

In this case, we must determine whether defendant's convictions of accosting a minor for immoral purposes or encouraging a minor to commit an immoral act, MCL 750.145a, and using a computer or the Internet to accomplish the same, MCL 750.145d, should be overturned on the basis of erroneous jury instructions. The instructions given at trial did not properly apprise the jury of the *actus reus* of the accosting a minor statute and were therefore plainly erroneous. However, we conclude that, regardless of whether defendant waived review of the jury instructions, the instructions did not result in

outcome-determinative error, defendant was not denied the effective assistance of counsel, and sufficient evidence was produced at trial to support the jury's verdict. We therefore reverse the judgment of the Court of Appeals and reinstate the jury convictions.

## I. FACTS AND PROCEDURAL HISTORY

Defendant, then aged 51, logged into a Yahoo! chat room under the screen name "mr_ltr_nmidmi_007" and engaged in a conversation with a person he believed to be a 15-year-old girl indentifying herself as "keyanagurl." Before he asked keyanagurl her age, defendant stated that he was "very horny" and asked keyanagurl if she wanted to role-play. Defendant went on to say that he enjoyed different types of sexual activities, including "role, phone, cyber" and "real!" In fact, keyanagurl was Vincent Emrick, an undercover police officer.

Upon learning that keyanagurl was supposedly a 15-year-old girl, defendant continued the chat. Defendant informed keyanagurl that he had a "great pool in the woods" with "no neighbors in sight," and asked if she had a boyfriend. Defendant told keyanagurl he was divorced, but explained that he would rather "be with someone, enjoy sharing and cuddling[.]" Defendant requested that keyanagurl send him photographs of herself, and keyanagurl agreed and sent a photograph of a 15-year-old girl. The conversation continued as follows:

> *Defendant*: I might hav too take cold shower … lol
>
> *keyanagurl*: ya me2
>
> * * *
>
> *Defendant*: you horny too?
>
> *keyanagurl*: ya

2

*Defendant*: mmm…nice

*Defendant*: what size chest do you hav looks awesome

* * *

*keyanagurl*: its 36b

*Defendant*: yummy

Defendant asked keyanagurl what she was wearing, and when she responded "nuthin hot," defendant exclaimed, "oh baby sweet." Defendant indicated that he was only wearing boxer shorts and repeatedly asked if the two could speak on the telephone or Internet voice chat. First, defendant asked keyanagurl, "you hav mic?" When keyanagurl responded that her microphone was broken, he asked if she had a cellular phone or whether she could enable his microphone on her computer. When that did not work, defendant asked to call her home phone. During these repeated attempts to speak with her, defendant also engaged in the following exchange:

*Defendant*: i lov to fantasize about young women gets me rock hard

*keyanagurl*: good

* * *

*Defendant*: i lov oral

*keyanagurl*: its ok

*Defendant*: esp [giving]

After keyanagurl refused his last attempt to speak with her on the phone, defendant conceded that he was "thinkin with wrong brain[.]" When keyanagurl asked defendant how many "brains" he had, defendant replied that he had two and that one was

3

in his boxers and was "gettin bigger" and "feels great[.]"  He stated that when he was in school he was "always horny[.]"  The chat concluded as follows:

> *Defendant*: jus need to cyber
>
> *Keyanagurl*: cyber wat
>
> *Defendant*: sx
>
> *keyanagurl*: ya wit who?
>
> *Defendant*: someone
>
>           * * *
>
> *keyanagurl*: u cyberin now
>
> *Defendant*: nope . . .
>
>           * * *
>
> *Defendant*: gonna stroke it soon

Over the following six days, keyanagurl chatted two more times with defendant. During the second chat, defendant stated that he was about to vacuum his pool to prepare for a party later that evening.  He stated that there would be friends and alcohol at the party and exclaimed, "cant wait for hot weather for skinny dipp[ing]."  Defendant also mentioned that he had a hot tub.  During the third chat, keyanagurl asked defendant about his pool party.  Defendant responded that "it was a blast" with "lots of partying" and explained that he was back at work.  He stated, "cant wait to get home and skinny dip" and "i love being naked."  Defendant explained that, during the party, "there was lots of naked bodies in my pool, big orgy[.]"  He stated that he was "a touchy feely type guy[.]"  When keyanagurl asked defendant if the partygoers were all drunk, defendant stated "yup" and remarked, "we needed a sexy waitress like you."

4

Shortly thereafter, Emrick appeared at defendant's home to execute a search warrant. Defendant denied that he owned a computer, denied that he had home Internet access, and denied that he had a Yahoo! account. However, Emrick observed a computer monitor in the home and confronted defendant with a local newspaper article that featured a story about how defendant used the Internet to collect Frisbees. Several hours after Emrick left the residence, a homeowner in the area saw defendant dump "thin strips of beige plastic" near a dirt road in a rural location. Police officers responded to the call and collected the parts.

At trial, prosecution witness Jasmine DeWeese testified that when she was 22 years old, she began an online relationship with defendant that included consensual cybersex and eventually led to physical sex. After two or three chats, defendant invited DeWeese to his home, and he offered to pay her to clean his house. DeWeese agreed and went to defendant's home on several occasions. She testified that defendant asked her to wear clothing that made her look "cute" and "young" and specifically requested that she wear a "schoolgirl" outfit. DeWeese testified that defendant suggested that she bring her underage sister along to help clean and swim in his pool, where "[s]uits were optional." DeWeese testified that defendant showed her his favorite pornographic websites and other pornography stored on his computer's hard drive. DeWeese testified that the photographs on the hard drive depicted girls that looked "extremely young" and sexually undeveloped. The trial court admitted DeWeese's testimony pursuant to MRE 404(b) to show defendant's intent and to show that defendant acted according to a common plan, scheme, or system.

Defendant did not present any evidence and instead moved for a directed verdict, which the trial court denied. During closing argument, the prosecutor stated that the accosting a minor statute, MCL 750.145a, required a finding that defendant "did accost, solicit, or entice." The prosecutor proceeded to define each of those terms and explained, "So those are the three ways you can do this. You accost, entice or solicit . . . [and] the prosecution has the burden of proving beyond a reasonable doubt all of the elements. That's one of the elements I have to prove." In her rebuttal, the prosecutor stated that "[a]ccosting a minor on the internet for the purposes I've described in the statute, that's illegal." The prosecutor noted that "[t]he law says accost, entice or solicit with a certain intent. . . . It says you accosted, enticed or solicited with the intent to result in an act." She argued that defendant had tried to entice and induce keyanagurl.

Defense counsel responded in closing argument that defendant had not accosted, enticed, solicited, or encouraged keyanagurl to commit any proscribed act, despite participating in the chats. Defense counsel argued that because defendant did not invite keyanagurl to meet him, did not ask her to have sex with him, and did not exchange obscene photographs with her, defendant could not be guilty of accosting a minor under MCL 750.145a. Rather, defense counsel asserted that a conviction under MCL 750.145a must be supported by "some kind of an action, . . . some kind of an act in furtherance – not just words."

Following closing arguments, the trial court instructed the jury on the elements of accosting a minor:

> The Defendant is charged with accosting a child for immoral purposes. To prove this charge, the Prosecutor must prove each of the following elements beyond a reasonable doubt. First, that the Defendant

6

believed he was engaging with a child under the age of 16 years. Second, that the Defendant has then the intent to induce that person who he believed to be under 16 years to commit an immoral act or an act of sexual intercourse or an act of gross indecency or other acts of depravity or delinquency *or did encourage said person to engage in one of those acts*. [Emphasis added.][1]

Defense counsel stated that he did not have any objection to the instructions. While deliberating, the jury asked the court for the definition of "accost," and the court provided the following dictionary definition: "to approach and speak to, greet first before being greeted, especially in an intrusive way." Defense counsel likewise did not object to that definition.

Thereafter, the jury convicted defendant of accosting a minor, MCL 750.145a, and of using a computer or the Internet to do the same, MCL 750.145d(1)(a). Defendant moved for a judgment of acquittal or for a new trial, arguing that insufficient evidence supported a finding of the *actus reus* element of MCL 750.145a. Defendant also moved for a *Ginther*[2] hearing and argued that trial counsel was ineffective for failing to object to the trial court's jury instructions. The trial court denied both motions.

Defendant appealed as of right, and the Court of Appeals reversed his convictions and remanded the case for a new trial.[3] The Court of Appeals held that the trial court failed to properly instruct the jury on MCL 750.145a because the instruction entirely

---

[1] There is no standard jury instruction for MCL 750.145a.

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[3] *People v Kowalski*, unpublished opinion per curiam of the Court of Appeals, issued April 27, 2010 (Docket No. 288855).

7

omitted the *actus reus* of the offense.[4]  The Court of Appeals concluded that the error was not harmless beyond a reasonable doubt because it was impossible to tell whether the jury would have reached the same result had it been properly instructed.  However, the Court of Appeals rejected defendant's challenge to the sufficiency of the evidence.  The prosecution applied for leave to appeal, and defendant applied for leave to cross-appeal.  We granted both applications.[5]

## II.  ANALYSIS

## A.  ELEMENTS OF MCL 750.145a

The prosecution argues that the Court of Appeals erred by concluding that the trial court committed instructional error warranting reversal.  Before determining whether the jury instructions were erroneous, we must first construe the meaning and elements of accosting a minor, MCL 750.145a.  We review de novo questions of statutory

---

[4] "*Actus reus*" is defined as "[t]he wrongful deed that comprises the physical components of a crime and that generally must be coupled with *mens rea* to establish criminal liability[.]"  Black's Law Dictionary (9th ed).

[5] *People v Kowalski*, 488 Mich 953 (2010).  In our order, we directed the parties as follows:

> The parties shall include among the issues to be briefed: (1) whether the Court of Appeals erred when it determined (a) that the trial court's jury instructions failed to apprise the jurors of the *actus reus* of the crime of accosting, enticing, or soliciting a child for immoral purposes, MCL 750.145a, and (b) that the error was not harmless beyond a reasonable doubt; (2) whether the defendant waived the instructional error, and if so, whether his attorney provided ineffective assistance of counsel; and (3) whether, when viewed in a light most favorable to the prosecution, the evidence presented at trial was sufficient to enable a rational jury to find that the *actus reus* of the charged offense was proven beyond a reasonable doubt.

8

interpretation.[6]  The primary goal in interpreting the meaning of a statute is to "ascertain and give effect to the intent of the Legislature . . . ."[7]  The first step in determining Legislative intent is consideration of the statutory language itself.[8]  Statutory language must be read in the context of the act as a whole, giving every word its plain and ordinary meaning.[9]  When the language is clear and unambiguous, we enforce the statute as written.[10]

MCL 750.145a, provides:

> A person who *accosts, entices, or solicits a child* less than 16 years of age, regardless of whether the person knows the individual is a child or knows the actual age of the child, or an individual whom he or she believes is a child less than 16 years of age with the intent to induce or force that child or individual to commit an immoral act, to submit to an act of sexual intercourse or an act of gross indecency, or to any other act of depravity or delinquency, *or who encourages a child* less than 16 years of age, regardless of whether the person knows the individual is a child or knows the actual age of the child, or an individual whom he or she believes is a child less than 16 years of age *to engage in any of those acts* is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $4,000.00, or both.  [Emphasis added.]

Reduced to its essential language, this provision states:

> A person who accosts, entices, or solicits a child . . . with the intent to induce or force that child . . . to commit an immoral act, to submit to an act of sexual intercourse or an act of gross indecency, or to any other act of

---

[6] *People v Lown*, 488 Mich 242, 254; 794 NW2d 9 (2011).

[7] *Id*. (quotation marks and citation omitted).

[8] *People v Lively*, 470 Mich 248, 253; 680 NW2d 878 (2004).

[9] *Herman v Berrien Co*, 481 Mich 352, 366; 750 NW2d 570 (2008).

[10] *People v Weeder*, 469 Mich 493, 497; 674 NW2d 372 (2004).

> depravity or delinquency, *or* who encourages a child . . . to engage in any of those acts is guilty of a felony . . . . [Emphasis added.]

Because the Legislature used the disjunctive term "or," it is clear that there are two ways to commit the crime of accosting a minor.[11] A defendant is guilty of accosting a minor if the prosecution proves beyond a reasonable doubt that the defendant (1) accosted, enticed, or solicited (2) a child (or an individual whom the defendant believed to be a child) (3) with the intent to induce or force that child to commit (4) a proscribed act. Alternatively, a defendant is guilty of accosting a minor if the prosecution proves beyond a reasonable doubt that the defendant (1) encouraged (2) a child (or an individual whom the defendant believed to be a child) (3) to commit (4) a proscribed act. Taken as a whole, the statute permits conviction under two alternative theories, one that pertains to certain acts and requires a specific intent and another that pertains to encouragement only and is silent with respect to *mens rea*.

Although the latter, "encourages" prong lacks an explicit element of intent, there is no clear indication that the Legislature meant to dispense with the *mens rea* requirement. When interpreting a criminal statute that does not have an explicit *mens rea* element, we do not construe the Legislature's silence as an intention to eliminate the *mens rea* requirement.[12] Significantly, the Legislature's use of the term "encourages" indicated its

---

[11] "'Or' is . . . a disjunctive [term], used to indicate a disunion, a separation, an alternative." *Mich Pub Serv Comm v City of Cheboygan*, 324 Mich 309, 341; 37 NW2d 116 (1949).

[12] This rule of construction stems from United States Supreme Court precedent establishing that courts will infer an element of criminal intent when an offense is silent regarding *mens rea* unless the statute contains an express or implied indication that the legislative body intended that strict criminal liability be imposed. See *People v Tombs*, 472 Mich 446, 452-456; 697 NW2d 494 (2005), discussing *United States v X-Citement*

10

intention that the *mens rea* element of the encourages prong be the intent to do the physical act of encouraging. The verb "encourages" contemplates intentional conduct by a defendant. To "encourage" means "to inspire with courage, spirit, or confidence[,] . . . to stimulate by guidance, approval, . . . to promote; foster."[13] Thus, the act of encouragement is the evil in itself, and an accused, by completing the act, is "presumed to intend the natural consequences of his [actions] . . . ."[14] In essence, the encourages prong envisions a *mens rea* consistent with a general criminal intent.[15]

In comparison, if a defendant has committed acts of accosting, enticing, or soliciting, the statute requires the prosecution to demonstrate a specific intent to induce or force the child to commit proscribed acts; it is not enough for the prosecution to merely

---

*Video, Inc*, 513 US 64; 115 S Ct 464; 130 L Ed 2d 372 (1994), *Staples v United States*, 511 US 600; 114 S Ct 1793; 128 L Ed 2d 608 (1994), and *Morissette v United States*, 342 US 246; 72 S Ct 240; 96 L Ed 288 (1952). Generally, with the exception of strict liability crimes, there can be no crime without a criminal intent. Inferring some type of guilty knowledge or intent is necessary when a statute is silent regarding *mens rea* because without it innocent conduct could be criminalized. See *People v Roby*, 52 Mich 577, 579; 18 NW 365 (1884).

[13] *Random House Webster's College Dictionary* (2001). Because the statute does not define the term "encourages," and because we must give undefined terms their plain and ordinary meaning, we may consider dictionary definitions to discern the Legislature's intent. *People v Denio*, 454 Mich 691, 699; 564 NW2d 13 (1997).

[14] *People v Getchell*, 6 Mich 496, 504 (1859) (distinguishing between the intent that must be shown for a specific intent crime and that for a general intent crime).

[15] "'[T]he distinction between specific intent and general intent crimes is that the former involve a particular criminal intent beyond the act done, while the latter involve merely the intent to do the physical act.'" *People v Nowack*, 462 Mich 392, 405; 614 NW2d 78 (2000), quoting *People v Beaudin*, 417 Mich 570, 573-574; 339 NW2d 461 (1983) (alteration in *Nowack*).

11

establish that the defendant committed acts of accosting, enticing, or soliciting. The Legislature's inclusion of alternative bases for conviction, one that requires proof of specific criminal intent and another that requires proof of a general criminal intent, demonstrated an intention to criminalize a wide range of sexually predatory actions aimed at children.

## B. JURY INSTRUCTIONS

Having construed the elements of MCL 750.145a, we now consider whether the trial court's instructions regarding the crime of accosting a minor were erroneous. We review de novo claims of instructional error.[16] We must consider the instructions as a whole, rather than piecemeal, to determine whether any error occurred.[17]

A criminal defendant has a constitutional right to have a jury determine his or her guilt from its consideration of every essential element of the charged offense.[18] A defendant is thus "'entitled to have all the elements of the crime submitted to the jury in a charge which [is] neither erroneous nor misleading . . . .'"[19] Instructional errors that omit an element of an offense, or otherwise misinform the jury of an offense's elements, do "not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for

---

[16] *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006).

[17] *People v Serra*, 301 Mich 124, 132; 3 NW2d 35 (1942) ("The charge must be read as a whole to determine whether it is prejudicial. The correctness cannot be tested by taking particular parts."); *People v Aldrich*, 246 Mich App 101, 124; 631 NW2d 67 (2001).

[18] *Lively*, 470 Mich at 251, citing *United States v Gaudin*, 515 US 506; 115 S Ct 2310; 132 L Ed 2d 444 (1995).

[19] *People v Feezel*, 486 Mich 184, 203; 783 NW2d 67 (2010), quoting *People v Pepper*, 389 Mich 317, 322; 206 NW2d 439 (1973) (alteration in *Feezel*).

determining guilt or innocence."[20]  Accordingly, an imperfect instruction is not grounds

for setting aside a conviction if the instruction fairly presented the issues to be tried and

adequately protected the defendant's rights.[21]

As noted, the trial court instructed the jury on the elements of accosting a minor as

follows:

> The Defendant is charged with accosting a child for immoral purposes.  To prove this charge, the Prosecutor must prove each of the following elements beyond a reasonable doubt.  First, that the Defendant believed he was engaging with a child under the age of 16 years.  Second, that the Defendant has then the intent to induce that person who he believed to be under 16 years to commit an immoral act or an act of sexual intercourse or an act of gross indecency or other acts of depravity or delinquency *or did encourage said person to engage in one of those acts*. [Emphasis added.]

Considering this instruction as a whole, we conclude that it misinformed the jury of the

elements of the offense.  Although the instruction was correct with respect to the

encourages prong of the offense, it erroneously omitted the *actus reus* element of the

"accosts, entices, or solicits" prong of the offense.  The fact that the trial court properly

instructed on the encourages prong of the offense did not negate this instructional error.

This is because we do not—and cannot—know whether the jury convicted defendant on

the basis of the accosts, entices, or solicits prong of the offense or the encourages prong

of the offense.  Because the trial court omitted the *actus reus* portion of the accosts,

---

[20] *Neder v United States*, 527 US 1, 9; 119 S Ct 1827; 144 L Ed 2d 35 (1999).

[21] *People v Kalder*, 284 Mich 235, 241-242; 279 NW 493 (1938) (concluding that an imperfect jury instruction "taken as a whole . . . fairly presented to the jury the issues to be tried and sufficiently protected the rights of defendant"); *People v Clark*, 274 Mich App 248, 255-256; 732 NW2d 605 (2007).

entices, or solicits prong, the instruction was erroneous and the jury was precluded from making a finding on this element of the offense.

Again, a jury instruction that improperly omits an element of a crime amounts to a constitutional error.[22] However, because defense counsel here explicitly and repeatedly approved the instruction, defendant has waived the error. This Court has defined "waiver" as "the intentional relinquishment or abandonment of a known right."[23] "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error."[24] When defense counsel clearly expresses satisfaction with a trial court's decision, counsel's action will be deemed to constitute a waiver.[25]

In this case, before jury selection, the trial court proposed to the prosecutor and defense counsel the jury instructions for accosting a minor ultimately given. After the court read the instructions, the following exchange occurred:

> *The Court*: Is there any objection to that as a preliminary instruction?
>
> *Defense Counsel*: Is that, is that taken from the statute—
>
> *The Court*: Yes.
>
>     \*   \*   \*

---

[22] *People v Carines*, 460 Mich 750, 761; 597 NW2d 130 (1999).

[23] *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (quotation marks and citation omitted).

[24] *Id*. (quotation marks and citation omitted).

[25] *Id*. at 219.

14

>*Defense Counsel*: [T]hat's where I took mine from as well so I, *I don't have an objection to that*. [Emphasis added.]

After the close of proofs, the trial court dismissed the jury, and defense counsel expressed his approval of the jury instructions generally. The trial court again read the proposed instruction for accosting a minor, along with several other model jury instructions. The trial court then asked:

>*The Court*: Any objection to those instructions?
>
>*Prosecutor*: No, your Honor.
>
>*Defense Counsel*: No, your Honor, not, not at this time.

After providing the instructions to the jury, the trial court once again asked counsel if there were any objections. Defense counsel for the fourth time stated, "None by the defense, your Honor." Thus, by expressly and repeatedly approving the jury instructions on the record, defendant waived any objection to the erroneous instructions, and there is no error to review.[26]

---

[26] *Id*. The Court of Appeals erred when it failed to address the prosecution's claim that defendant waived the instructional error. The partial concurrence suggests that we "hastily presume that a waiver occurred in this case simply because defense counsel stated on more than one occasion that he had no objection to the instruction." *Post* at 3. However, our waiver analysis considers the entire record, which reveals that defense counsel (1) discussed the instructions with the court, (2) affirmatively approved the instructions because he thought they were identical to his own proposed instructions, and (3) then reaffirmed his approval three more times. Thus, the record clearly demonstrates waiver—an intentional relinquishment of a known right—because counsel's affirmative statements were repeated, express, and unequivocal and concerned instructions that counsel had more than ample time to fully review and consider.

Defendant, however, argues that defense counsel merely forfeited the error because counsel did not state that he "approved" of the instructions.[27] The distinction defendant attempts to make between counsel stating, "I approve of the instructions," and counsel stating, "I have no objections," is unavailing. Counsel's statements were express and unequivocal indications that he approved of the instructions.[28] To hold otherwise would allow counsel to "harbor error at trial and then use that error as an appellate parachute . . . ."[29] Nevertheless, even if we were to accept defendant's argument that defense counsel did not waive the issue and, instead, merely forfeited it, defendant would not be entitled to reversal and a new trial.

We review unpreserved constitutional error for plain error affecting a defendant's substantial rights.[30] In order to avoid forfeiture under a plain-error analysis, defendant

---

[27] Unlike waiver, forfeiture is "the failure to make the timely assertion of a right." *Carter*, 462 Mich at 215 (quotation marks and citation omitted).

[28] The Court of Appeals has consistently held that an affirmative statement that there are no objections to the jury instructions constitutes express approval of the instructions, thereby waiving review of any error on appeal. See *People v Chapo*, 283 Mich App 360, 372-373; 770 NW2d 68 (2009); *People v Matuszak*, 263 Mich App 42, 57; 687 NW2d 342 (2004); *People v Lueth*, 253 Mich App 670, 688; 660 NW2d 322 (2002).

[29] *People v Szalma*, 487 Mich 708, 726; 790 NW2d 662 (2010); see also *Carter*, 462 Mich at 214 ("Counsel may not harbor error as an appellate parachute.").

[30] *Carines*, 460 Mich at 764. The Court of Appeals erred by reviewing the instructional error under the harmless-error test articulated in *People v Anderson (After Remand)*, 446 Mich 392, 404-406; 521 NW2d 538 (1994). The harmless-error test applies to *preserved* constitutional errors. See *Carines*, 460 Mich at 774. In this case, defendant did not preserve his claim of constitutional error for review; rather, as we have concluded, he waived any error. Additionally, defendant improperly contends that the jury instructions amounted to structural error warranting automatic reversal under *People v Duncan*, 462 Mich 47, 52-54; 610 NW2d 551 (2000). In *Duncan*, we held that when a trial court fails to instruct on *any* of the elements of a charged offense, the error is structural in nature

16

must establish (1) that an error occurred, (2) that the error was plain, and (3) that the plain error affected defendant's substantial rights.[31] Even if defendant could satisfy these requirements, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error "'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings" independent of the defendant's innocence.'"[32]

Defendant has established that an instructional error occurred and that the error is plain and obvious on the record. However, defendant cannot establish that this error affected his substantial rights. We have previously held that jury instructions that were somewhat deficient may nonetheless, when viewed as a whole, have sufficed to protect a defendant's rights when the jury would have convicted the defendant on the basis of the evidence regardless of the instructional error.[33] If the evidence related to the missing element was overwhelming and uncontested, it cannot be said that the error affected the defendant's substantial rights or otherwise undermined the outcome of the proceedings.[34]

---

and warrants automatic reversal. *Id.* Unlike the court in *Duncan*, the trial court here did not fail to instruct on all the elements of MCL 750.145a.

[31] *Carines*, 460 Mich at 763.

[32] *Id.*, quoting *United States v Olano*, 507 US 725, 736-737; 113 S Ct 1770; 123 L Ed 2d 508 (1993) (alteration in *Carines*).

[33] See, e.g., *Carines*, 460 Mich at 770-771 (holding that an instructional error omitting an element of the charged offense did not affect the defendant's substantial rights because the jury would not have convicted the defendant without concluding that the defendant committed the acts constituting the omitted element).

[34] See *Neder*, 527 US at 17 ("[W]here a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming

Here, even if the trial court had properly instructed on the accosts, entices, and solicits prong of the offense, the jury would still have convicted defendant because the Internet chats, in and of themselves, were immoral, grossly indecent, delinquent, and depraved acts that constituted the *actus reus* under either prong of the offense.[35] The only acts on which the prosecution based the charge were defendant's online exchanges with keyanagurl. These chats were admitted into evidence, without any objection, and defendant, during opening and closing argument, conceded that these conversations occurred. The content of the exchanges established beyond any reasonable doubt that the chats constituted immoral, grossly indecent, depraved, or delinquent acts.[36]

---

evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless.").

[35] Furthermore, review of the record as a whole indicates that the jury was aware that MCL 750.145a required the prosecutor to prove that defendant committed one of the acts proscribed by the statute, which included encouraging a minor to commit an immoral or delinquent act. The trial court told the jury that defendant was charged with "accost[ing], entic[ing], or solicit[ing]" a child. In addition, during closing arguments, both parties consistently asserted that MCL 750.145a required proof that defendant committed an act. The prosecutor informed the jury that it had to find that defendant accosted, enticed, solicited, or encouraged keyanagurl. The prosecutor stated that the statute required her to prove that defendant accosted or enticed. She explained that "accosting" was illegal, and noted that the "law says accost, entice, or solicit with a certain intent." The prosecutor argued that defendant tried to entice or induce keyanagurl. Defense counsel informed the jury that it had to find that defendant committed an act. Finally, after deliberations began, the jury requested that the trial court provide a legal definition of "accost," and the trial court honored that request.

[36] Although there is no Michigan caselaw defining these terms in the context of MCL 750.145a, this Court in *People v Lino*, 447 Mich 567, 578; 527 NW2d 434 (1994), explained that an individual's "orchestrating the conduct of [a minor] to facilitate . . . sexual arousal and masturbation in the presence of the minors would constitute the offense of procuring, or attempting to procure, an act of *gross indecency . . . .*" (Emphasis added.)

18

At the outset, defendant invited keyanagurl to engage in role-playing or cybersex. After learning keyanagurl's age, defendant continued to guide the course of the conversation in a manner intended to heighten the sexualized nature of the chats. Defendant asked keyanagurl if she was "horny" and indicated that he was; defendant asked keyanagurl for her photograph and upon receiving it, indicated that he was sexually aroused and referred to physical attributes of his genitalia; and defendant told keyanagurl that he enjoyed fantasizing about young women and performing oral sex. Defendant also told keyanagurl that she was "cute" and had a "yummy" chest.

Moreover, defendant sought to escalate the instant messaging conversation by repeatedly requesting or soliciting keyanagurl to talk over the telephone or using their computers' microphones, interspersing those solicitations with highly sexualized comments, including comments about how horny he was. After keyanagurl rebuffed defendant's attempts to speak with her, this first chat between defendant and keyanagurl concluded with defendant stating that he needed to have cybersex with someone and that he would soon masturbate. In subsequent chats, defendant spoke of a "big orgy," skinny-dipping, his hot tub, and how he loved to be naked; he also told keyanagurl that he needed her to be his "sexy waitress."

Additionally, DeWeese's testimony would have allowed a rational juror to conclude that defendant's acts were intended to engage keyanagurl in sexually delinquent behavior through a common plan or scheme that he had used on DeWeese. DeWeese testified that her online chats with defendant eventually led to cybersex at defendant's direction. She testified that defendant told her to dress so that she looked "young" and explained that defendant had a collection of pornographic photographs of sexually

19

undeveloped girls. Further, a jury could have inferred from the testimony of the homeowner who lived in the area that, after Emrick questioned defendant, defendant destroyed his computer and discarded it in a secluded, rural location. This, coupled with defendant's dishonesty about having home Internet access, would have allowed a jury to infer that defendant evinced a consciousness of guilt.[37]

Taking all this evidence together, it is clear that the evidence of the *actus reus* under either prong of the offense was overwhelming and uncontroverted. The chats constituted highly sexualized conversations, which were by themselves immoral, grossly indecent, delinquent, or depraved acts. These highly sexualized conversations between defendant (an adult stranger) and a person whom he presumed to be a child, in which the child sent the stranger her photograph, was asked for her phone number, and was continuously objectified in a sexual manner, would have given an actual child a distorted and unhealthy view of human relationships and would have involved her in a distinctly antisocial set of behaviors. As the prosecutor explained at trial, "sex talk over the internet," such as the highly sexualized conversations that undisputedly occurred between defendant and someone whom he believed to be a 15-year–old girl, "in and of itself is a delinquent act for a minor to be engaging in . . . ." We agree with the prosecutor that, according to "common everyday understanding . . . this [kind of sex talk over the Internet] is delinquent behavior . . . ." By engaging in the chats, defendant committed the

---

[37] See *People v Cutchall*, 200 Mich App 396, 400-401, 404-405; 504 NW2d 666 (1993) (noting that attempts to conceal involvement in a crime are probative of a defendant's consciousness of guilt), overruled in part on other grounds by *People v Gatewood*, 450 Mich 1025 (1996); *People v Unger*, 278 Mich App 210, 227; 749 NW2d 272 (2008) ("A jury may infer consciousness of guilt from evidence of lying or deception.").

*actus reus* of accosting a minor under either prong of the offense. Therefore, by admitting that he participated in the chats with a person he presumed was a 15-year-old girl, defendant cannot establish that the trial court's charge to the jury affected the outcome of the lower court proceedings.[38]

## III. CONCLUSION

Defendant engaged in highly sexualized online chats with a person whom he believed to be a 15-year-old girl. In doing so, he accosted, enticed, solicited, or encouraged a child to commit an immoral, grossly indecent, delinquent, or depraved act within the meaning of those terms in MCL 750.145a. Although the trial court erred when it failed to instruct on the *actus reus* of the accosts prong of the offense, reversal is not warranted. Regardless of whether defendant waived review of the instructional error, the error did not affect his substantial rights, defendant was not denied the effective assistance of counsel, and there was sufficient evidence to support his convictions. We

---

[38] We also reject defendant's arguments related to ineffective assistance of counsel and sufficiency of the evidence. To establish that he was denied the effective assistance of counsel, "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Even assuming that defense counsel acted deficiently under an objective standard of reasonableness when he agreed to the jury instructions, defendant cannot establish that there is a reasonable probability that, but for defense counsel's failure to object, the result of the proceeding would have been different. For the same reasons that we conclude that defendant failed to show outcome-determinative prejudice under the plain-error standard discussed earlier in this opinion, we also conclude that defendant failed to show that there was a "reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. From the same evidence, we likewise conclude that sufficient evidence supported defendant's convictions under MCL 750.145a and MCL 750.145d(1)(a).

therefore reverse the judgment of the Court of Appeals and remand for reinstatement of the judgment of sentence pursuant to the jury convictions.

> Mary Beth Kelly
> Robert P. Young, Jr.
> Stephen J. Markman
> Diane M. Hathaway
> Brian K. Zahra

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant/Cross-
        Appellee,

v                                  No. 141695

EDWARD MICHAEL KOWALSKI,

        Defendant-Appellee/Cross-
        Appellant.

_____

CAVANAGH, J. (*concurring in the result*).

I agree with the majority's conclusion that the trial court improperly instructed the jury on the charged offense, MCL 750.145a. Although I do not believe that the evidence against defendant was "overwhelming," I concede that, under the facts of this case, defendant cannot establish that he is entitled to relief under plain-error review. Accordingly, I concur only with the result reached by the majority opinion. I write separately, however, because I question the majority's waiver analysis. I also write to reiterate my belief that this Court should not have extended the plain-error review doctrine to the type of arguably unpreserved constitutional error present in this case.

Federal caselaw suggests that the majority's waiver analysis is overly simplistic. As the majority correctly explains, the canonical definition of "waiver" is the "'*intentional* relinquishment of a *known* right.'" *People v Shahideh*, 482 Mich 1156, 1180 (2008) (CAVANAGH, J., dissenting), quoting *Bailey v Jones*, 243 Mich 159, 162; 219

NW 629 (1928) (emphasis added). Applying this definition, the United States Court of Appeals for the Third Circuit has concluded that the threshold question in determining whether an issue capable of being waived has indeed been waived is "whether the appellant who failed to object in the trial court to an error that violated his rights was *aware* of the relinquished or abandoned right." *Virgin Islands v Rosa*, 399 F3d 283, 291 (CA 3, 2005) (emphasis added). In other words, while "waiver is accomplished by intent," unpreserved, or what has been dubbed "forfeited," error "comes about through neglect." *United States v Cruz-Rodriguez*, 570 F3d 1179, 1183 (CA 10, 2009) (quotation marks and citations omitted); see, also, *People v Grant*, 445 Mich 535, 554; 520 NW2d 123 (1994) (LEVIN, J., concurring). Accordingly, a rote statement by trial counsel that he has "no objection" to the instructions, or his expression of satisfaction with the instructions as given, may not necessarily be determinative of whether the right was in fact waived. *Rosa*, 399 F3d at 287-289, 291, 293. Instead, whether a failure to object will be deemed a waiver depends on whether the defendant had knowledge of the right, yet intentionally chose to abandon it or "consciously refrain[ed] from objecting as a tactical matter." *Id*. at 291 (quotation marks and citations omitted).[1]

---

[1] See, also, *Cruz-Rodriguez*, 570 F3d at 1183, 1185 (stating that "[w]aiver occurs when a party *deliberately considers* an issue and makes an *intentional decision* to forgo it" and identifying the "classic waiver" situation as occurring when "a party 'actually identified the issue,' 'deliberately considered' it, and then affirmatively acted in a manner that 'abandoned any claim' on the issue") (emphasis added) (citation omitted); *United States v Arviso-Mata*, 442 F3d 382, 384 (CA 5, 2006) (concluding that a scoring error was not waived when there was no evidence that counsel "knew of the sentencing guidelines issue," yet "consciously chose" to forgo it given defense counsel's mere statement that he had "no problem" with the presentence report); accord *People v Grimmett*, 388 Mich 590, 598, 601; 202 NW2d 278 (1972) (explaining that waiver requires both "specific knowledge of the constitutional right" and an "intentional decision to abandon the . . .

2

Although some federal courts have concluded otherwise, see, e.g., *United States v Gonzalez*, 319 F3d 291, 298 (CA 7, 2003), in my view, the aforementioned analysis is persuasive and consistent with the generally recognized notion that waiver of a constitutional right should not be lightly presumed, see *Brookhart v Janis*, 384 US 1, 4; 86 S Ct 1245; 16 L Ed 2d 314 (1966) (explaining that "[t]here is a presumption against the waiver of constitutional rights"); *Rosa*, 399 F3d at 294 n 12 (explaining that a defendant's federal due process rights are violated if a jury instruction omits or materially misdescribes an essential element of an offense). By focusing on the definition of waiver—i.e., the *intentional* relinquishment of a *known* right—the federal caselaw discussed ensures that a defendant's right to appellate review of an instructional error is not summarily foreclosed simply because trial counsel mechanically agreed with an erroneous jury instruction when counsel was unaware of the correct rule of law or, if aware of it, did not realize that the instruction misstated the law. *Rosa*, 399 F3d at 291.

In light of this caselaw, I would not hastily presume that a waiver occurred in this case simply because defense counsel stated on more than one occasion that he had no objection to the instruction. Indeed, the facts of *Rosa* counsel against such an analysis. See *id.* at 287-289, 291, 293.[2]

_____

right" and concluding that no waiver occurred when defense counsel was mistaken in his view of the law), overruled on other ground by *People v White*, 390 Mich 245; 212 NW2d 222 (1973), overruled on other grounds by *People v Nutt*, 469 Mich 565; 677 NW2d 1 (2004).

[2] In *Rosa*, the United States Court of Appeals for the Third Circuit did not find a "knowing waiver situation" despite discussions regarding the jury instructions and despite defense counsel's (1) statement that he had "looked at" the proposed instructions, that they could apply to his client, and that he had no additions to or modifications or

Nevertheless, I concur with the majority's result because I agree with the majority's conclusion that defendant cannot establish that he is entitled to relief under the plain-error standard of review. As I have noted in the past, however, I continue to disagree with this Court's decision to extend plain-error review to unpreserved constitutional errors and instead would subject such errors to harmless-error analysis. See *Grant*, 445 Mich at 554-557 (LEVIN, J., concurring); *People v Carines*, 460 Mich 750, 775-783; 597 NW2d 130 (1999) (MARILYN KELLY, J., concurring in part and dissenting in part); *People v Borgne*, 483 Mich 178, 196 n 8, 202 n 17; 768 NW2d 290 (2009). Indeed, as I have previously stated, the notion that a defendant would not be entitled to relief if, despite the error seriously affecting the fairness and integrity of the trial, he could not prove prejudice "seems to be an anomaly that should not stand" and is yet another reason that I continue to disagree with the *Carines* and *Grant* framework. *Borgne*, 483 Mich at 202 n 17. I acknowledge that my position regarding unpreserved constitutional errors has yet to win the favor of this Court. Thus, as I have done in other cases, I recognize that *Carines* is the law in Michigan. For this reason, I concur only in the result reached by the majority opinion.

Michael F. Cavanagh
Marilyn Kelly

---

corrections of the proposed instructions and (2) statements on at least three occasions that he was satisfied with the proposed jury instructions, including at least one acquiescence that occurred after a delay that provided the attorneys additional time to review and raise objections to the proposed instructions. *Rosa*, 399 F3d at 287-289, 291, 293.

4