*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

HEATHER NICOLE ALEXANDER,

        Defendant-Appellant.

UNPUBLISHED
November 19, 2025
9:31 AM

No. 369924
Kent Circuit Court
LC No. 22-009620-FH

Before: GARRETT, P.J., and PATEL and YATES, JJ.

PER CURIAM.

Defendant, Heather Nicole Alexander, was convicted by jury verdict of failing to provide 25 or more dogs with adequate care, MCL 750.50(2)(a) and (4)(e). On appeal, defendant contests the final instructions and the verdict form furnished to the jury, challenges the sufficiency of the evidence supporting her conviction, asserts that her trial counsel was ineffective, and contends that her trial counsel's errors cumulatively deprived her of a fair trial. We affirm.

## I. FACTUAL BACKGROUND

In March 2022, Deputy Anna Birkeland of the Kent County Sheriff's Department noticed a minivan parked in a lot of a business that was closed for the day, and observed defendant standing outside of the minivan. Deputy Birkeland pulled her patrol vehicle close to the minivan to perform a welfare check and to see if the business was secure. Upon approaching, Deputy Birkeland could hear a dog barking inside the vehicle, and detected the strong smell of urine and feces, despite the minivan's doors being closed. Deputy Danielle Pedroza arrived to assist Deputy Birkeland. She also observed the barking dogs and smelled urine and feces from 15 feet away. Defendant asserted that the heat in her vehicle was no longer working, and she was not able to operate a space heater that she had, so she was going to use hand warmers to keep warm. Defendant explained that she had 27 dogs in her minivan, that she lived in the van with her dogs, and that she let them outside once per day. The deputies observed dog crates stacked on top of each other, with one crate being tilted. Each crate contained several dogs with what Deputy Birkeland characterized as insufficient water in the bottles attached to the crates. Defendant asserted that it had been a half hour since the dogs had had access to water.

-1-

The dogs were stepping on puppy pads inside the crates, those pads were filled with urine and feces, and feces was wrapped around the wiring of the crates. Defendant claimed that she had cleaned the crates earlier that day. Deputy Birkeland noted that, given the size of the crates and the number of dogs in each crate, the dogs were unable to all lay down, turn around, or stretch out all at the same time, and they were very cramped. But Scott Dobbins from the Kent County Animal Shelter—who was called to respond and to take possession of the dogs—stated that the dogs had adequate space to turn around in their crates, they were neither malnourished nor dehydrated, and they had no signs of skin conditions, diseases, ringworm, mange, embedded nails, or damage to their paws ordinarily associated with prolonged standing in urine or feces. Dobbins testified that it seemed that the quantity of feces in the crates amounted to less than a day's worth of feces, given the number and ages of the dogs in the crates.[1] Dobbins nonetheless stated that 27 dogs could not live adequately in defendant's minivan.

At trial, Dr. Kristin Davison, a veterinarian at the Kent County Animal Shelter, testified as an expert witness for the prosecution that she examined "half" of the dogs a month after they were seized from defendant. Dr. Davison found none of the examined dogs displayed any significant medical issues, and none displayed any conditions that differed from what would be observed with a well-cared-for dog. However, Dr. Davison explained what the "five freedoms of animal welfare" are, characterizing them as: (1) freedom from hunger and thirst; (2) freedom from discomfort; (3) freedom from pain, injury, or disease; (4) freedom to express normal behaviors; and (5) freedom from fear and distress.[2] In her opinion, based solely on her assessment of photographs taken of the dogs in defendant's minivan, the dogs lacked freedom from discomfort and freedom to express normal behaviors while in defendant's care because of overcrowding, and the dogs lacked freedom from distress because one of the crates was not placed levelly in defendant's vehicle. Dr. Davison opined that if the dogs had continued to live in those conditions, they would have been "at a higher risk of developing disease and discomfort" than dogs living in ideal conditions.

Defendant called Dr. Ann Cavender as a competing expert witness, and after reviewing the materials in this matter, Dr. Cavender testified that nothing indicated that any dog was improperly fed or dehydrated, and that the dogs appeared to have received adequate exercise and socialization. Based on the number and age of the dogs in the crates, Dr. Cavender testified that she would have expected more feces in the crates than what was observed had the crates not been regularly cleaned, and that she found no evidence that the dogs had been overcrowded for an extended period of time. Dr. Cavender conceded that the dogs living in defendant's vehicle as a long-term arrangement was "not ideal," but she concluded that defendant's dogs had not been neglected.

---

[1] Dobbins explained that the Kent County Animal Shelter allows approximately 12 hours between cleaning waste out of its kennels, and the dogs there often walk in their own feces and urine.

[2] In her explanation of the five freedoms, Dr. Davison provided materially similar definitions for freedom from discomfort and freedom to express normal behaviors, focusing both on the size and sanitary nature of an animal's shelter.

Defendant faced one charge of failing to provide 25 or more animals with adequate care, MCL 750.50(2)(a) and (4)(e).[3] After the close of proofs, the prosecution requested that the jury also be instructed on the "alternative" count of failing to securely transport ten or more, but fewer than 25, animals under MCL 750.50(2)(d) and (4)(d). The trial court granted that request over defendant's objection. The jury convicted defendant of failing to provide 25 or more animals with adequate care, and she was subsequently sentenced to 24 months of probation. This appeal of right followed.

## II. LEGAL ANALYSIS

On appeal, defendant asserts that there were errors in the trial court's final instructions to the jury and the verdict form it provided. Defendant also contends that her conviction cannot stand because it is not supported by sufficient evidence. Defendant further argues that her trial counsel was ineffective for failing to object to the prosecution's presentation of evidence pursuant to MRE 404(b). Finally, defendant claims that her counsel's numerous errors had the cumulative effect of depriving her of a fair trial. We will address these arguments in turn.

## A. FINAL INSTRUCTIONS AND VERDICT FORM

Defendant insists the jury was incorrectly advised that the crime of failing to secure ten or more, but fewer than 25, animals was an "alternative" crime, rather than a lesser-included offense, and that error was present in the jury's final instructions and the verdict form. Defendant contends that because of those errors, and because the verdict form was vague and confusing, a miscarriage of justice resulted. "To preserve an instructional error for review, a defendant must object to the instruction before the jury deliberates." *People v Gonzalez*, 256 Mich App 212, 225; 663 NW2d 499 (2003). Defendant objected to the verdict form before the jury began its deliberations, but she did not object to the final verbal instructions the trial court gave to the jury. Therefore, defendant's challenge to the verdict form is preserved for appellate purposes, but defendant's challenge to the final instructions is not preserved.[4]

Jury instructions that involve questions of law are reviewed de novo. *People v Schaefer*, 473 Mich 418, 427; 703 NW2d 774 (2005). This Court "must consider the instructions as a whole, rather than piecemeal, to determine whether any error occurred." *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011). Preserved constitutional errors are subject to the harmless-error standard, *id*. at 505 n 30, which requires a defendant to demonstrate that it was more probable than not that the error was outcome-determinative. *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999). But this Court reviews an "unpreserved constitutional error for plain error affecting a

---

[3] Defendant's felony information incorrectly cited MCL 750.50(4)(d), which applies to a violation involving "10 or more animals but fewer than 25 animals," and is punishable by no more than four years' imprisonment. See MCL 750.50(4)(d)(*i*). In contrast, failing to provide 25 or more animals with adequate care is punishable by no more than seven years in prison. See MCL 750.50(4)(e)(*i*). Despite that flaw in the information, the judgment of sentence correctly cited MCL 750.50(4)(e).

[4] The prosecution argues that the issue was waived because defendant's trial counsel approved the final jury instructions and verdict form. However, the record does not support that position.

defendant's substantial rights," which requires "(1) that an error occurred, (2) that the error was plain, and (3) that the plain error affected defendant's substantial rights," and "reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Kowalski*, 489 Mich at 505-506 (quotation marks and citation omitted). An error affects substantial rights if "there is 'a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings.' " *People v Walker*, 504 Mich 267, 276; 934 NW2d 727 (2019), quoting *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

The verdict in a criminal case cannot be set aside, nor a new trial granted, because the jury was misdirected unless "it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice." MCL 769.26. "[A] defendant has the burden of establishing a miscarriage of justice under a 'more probable than not standard.' " *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019) (quotation marks omitted).

Defendant was tried for violating MCL 750.50(2)(a) and (4)(e), which provide in pertinent part as follows:

> (2) An owner, possessor, . . . or person having the charge or custody of an animal shall not do any of the following:
>
> (a) Fail to provide an animal with adequate care.
>
> * * *
>
> (4) A person who violates subsection (2) is guilty of a crime as follows:
>
> * * *
>
> (e) If the violation involved 25 or more animals . . . the person is guilty of a felony punishable by . . . :
>
> (*i*) Imprisonment for not more than 7 years.

After the close of proofs, the prosecution moved to add a second count "in the alternative" pursuant to MCL 750.50(2)(d) and (4)(d), which the trial court granted over defendant's objections. Those portions of that statute state:

> (2) An owner, possessor, . . . or person having the charge or custody of an animal shall not do any of the following:
>
> * * *
>
> (d) Carry or cause to be carried a live animal in or upon a vehicle or otherwise without providing a secure space, rack, car, crate, or cage in which livestock may stand and in which all other animals may stand, turn around, and lie down during transportation . . . .

* * *

(4) A person who violates subsection (2) is guilty of a crime as follows:

* * *

(d) If the violation involved 10 or more animals but fewer than 25 . . . the person is guilty of a felony punishable by . . . :

(*i*) Imprisonment for not more than 4 years.

As an initial matter, the issue in dispute requires some clarification. Both the prosecution and the trial court presumed that failure to securely transport ten or more animals, but fewer than 25 animals, was an alternative theory to the crime of failure to provide adequate care to 25 or more animals. Defendant argues to this Court that one offense is the lesser-included offense of the other. Neither position is correct. The only element shared between the offenses is the requirement that the defendant be an "owner, possessor, . . . or person having the charge or custody of an animal." MCL 750.50(2). Otherwise, the remaining elements are not shared between the two offenses, as they require different proofs. Therefore, MCL 750.50(2)(a) and (4)(e), and MCL 750.50(2)(d) and (4)(d), constitute separate crimes, not "alternative" theories of the same crime, or a lesser-included offense, because each offense requires proof of a fact that the other does not. See *People v McGee*, 280 Mich App 680, 682-685; 761 NW2d 743 (2008).

During its final instructions, the trial court incorrectly informed the jury that the offense of failure to securely transport ten or more animals was "an alternative count," and the court neglected to inform the jury that such an offense applies to fewer than 25 animals. Furthermore, the verdict form merely characterized the two offenses as "Count I: Animal Cruelty or Abandonment," and "Alternative Count: Animal Cruelty or Abandonment" without differentiating the two offenses in any other manner. Further, the verdict form permitted the jury to consider "Count II" "only if you find Defendant not guilty of Count I."

"A criminal defendant has a constitutional right to have a jury determine his or her guilt from its consideration of every essential element of the charged offense[,]" and is "entitled to have all the elements of the crime submitted to the jury" that are "neither erroneous nor misleading[,]" but instructional "errors that omit an element of an offense, or otherwise misinform the jury of an offense's elements, do not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Kowalski*, 489 Mich at 501 (quotation marks omitted). Thus, "an imperfect instruction is not grounds for setting aside a conviction if the instruction fairly presented the issues to be tried and adequately protected the defendant's rights." *Id*. at 501-502.

Regarding defendant's preserved challenge to the verdict form, it is clear that the trial court erred, but defendant has not demonstrated that it is "more probable than not" that a miscarriage of justice resulted. *Thorpe*, 504 Mich at 252; MCL 769.26. In this case, had the jury been instructed properly on the two separate criminal offenses, and had the verdict form correctly reflected those two separate offenses, it may have been detrimental to defendant because the jury could have found her guilty of both offenses. Here, the jury convicted defendant of the primary offense of failing to provide adequate care to 25 or more animals, and, as it was instructed on the verdict form, the jury

did not "[p]roceed to the Alternative Count" because the jury did not "find Defendant not guilty of Count I."

Turning to defendant's unpreserved challenge to the final jury instructions, and accordingly applying the plain-error standard, we conclude that an error occurred that was plain, but defendant has not established that the plain error affected the outcome of the proceedings. *Walker*, 504 Mich at 276. Thus, we cannot provide relief to defendant on her unpreserved challenge to the final jury instructions.

## B. SUFFICIENCY OF THE EVIDENCE

Defendant asserts that insufficient evidence was presented during her trial to establish that she failed to provide adequate care to 25 or more animals because the prosecution's expert witness only examined half of the dogs, and no evidence was presented as to which of the 27 dogs did not receive adequate care. This Court reviews de novo a defendant's challenge to the sufficiency of the evidence supporting his or her convictions. *People v Harverson*, 291 Mich App 171, 175-177; 804 NW2d 757 (2010). In considering whether sufficient evidence exists to sustain a conviction, this Court must review the evidence in the light most favorable to the prosecution, and consider whether "there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Harris*, 495 Mich 120, 126; 845 NW2d 477 (2014). "[T]he standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict," irrespective of "whether the evidence is direct or circumstantial." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (quotation marks and citations omitted). Both circumstantial evidence and the "reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *Id*. "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *Id*. (quotation marks, citations, and emphasis omitted).

The elements of failing to provide adequate care for 25 or more animals, pursuant to MCL 750.50(2)(a) and (4)(e), are: (1) "that [the defendant] owned, possessed, or had custody or charge of an animal"; (2) "that [the defendant] failed to provide the animal with adequate care"; and (3) "that the offense involved 25 or more animals." *People v Parkinson*, 348 Mich App 565, 577; 19 NW3d 174 (2023). "Adequate care" is statutorily defined as "the provision of sufficient food, water, shelter, sanitary conditions, exercise, and veterinary medical attention in order to maintain an animal in a state of good health." MCL 750.50(1)(a). The term "sanitary conditions" refers to "space free from health hazards including excessive animal waste, overcrowding of animals, or other conditions that endanger the animal's health." MCL 750.50(1)(k). "Shelter" is statutorily defined as "adequate protection from the elements and weather conditions suitable for the age, species, and physical condition of the animal so as to maintain the animal in a state of good health," and, as it pertains to dogs specifically, must include one or more of the following: "[t]he residence of the dog's owner or other individual," "[a] doghouse . . . ," or "[a] structure . . . that is sufficiently insulated and ventilated . . . ." MCL 750.50(1)(*l*). And "state of good health" refers to "freedom from disease and illness, and in a condition of proper body weight and temperature for the age and species of the animal, unless the animal is undergoing appropriate treatment." MCL 750.50(1)(m).

The evidence presented at trial established that it was not ideal for 27 dogs to be living in defendant's minivan, and that was confirmed by both parties' expert witnesses. The two deputies and Dr. Davison testified that the dogs were overcrowded, and all of the witnesses acknowledged that the dogs' crates contained animal waste. The concept of "adequate care" includes providing sufficient "sanitary conditions," which means a "space free from . . . excessive animal waste [and] overcrowding of animals[.]" MCL 750.50(1)(a) and (1)(k). Despite testimony that the dogs were in good health, the evidence was sufficient "to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *Harris*, 495 Mich at 126. "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences," *Oros*, 502 Mich at 239 (quotation marks, citations, and emphasis omitted), and the jury, despite hearing competing testimony as to whether the amount of dog waste in the crates was "excessive" or whether the dogs were overcrowded, accorded more weight to the prosecution's evidence and convicted defendant. Thus, we reject defendant's claim that the trial record does not contain sufficient evidence to support her conviction.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant contends that her trial counsel was ineffective for failing to object to testimony the prosecution presented pursuant to MRE 404(b), and for failing to request a limiting instruction regarding the evidence presented pursuant to MRE 404(b) to the extent that it revealed her status as homeless, which she characterizes as prejudicial. Whether a defendant has been deprived of the effective assistance of counsel presents a mixed question of fact and constitutional law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). The factual findings are reviewed for clear error, but constitutional determinations are reviewed de novo. *Id*. "Clear error" exists if this Court "is left with the definite and firm conviction that a mistake has been made." *People v Anderson*, 284 Mich App 11, 13; 772 NW2d 792 (2009) (quotation marks and citation omitted). But because no evidentiary hearing was held, our review "is limited to mistakes that are apparent on the record." *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005).

To prevail on her claim of ineffective assistance of counsel, "defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome [of the trial] would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). The effective assistance of counsel "is presumed, and the defendant bears a heavy burden to prove otherwise." *Mack*, 265 Mich App at 129. Therefore, a defendant "must overcome the strong presumption that defense counsel's performance was born from a sound trial strategy," *Trakhtenberg*, 493 Mich at 52, and "[t]his Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999).

Here, the prosecution gave notice to defendant pursuant to MRE 404(b)(3) of its intent to present other-acts evidence of a 2021 incident in Wisconsin involving defendant's possession of approximately 20 dogs in a U-Haul vehicle. The prosecution's notice failed to indicate which non-propensity purpose supported admission of such evidence. Regardless, defendant's trial counsel did not object to the proposed evidence, either before or at the trial. Officer Justin Triumph of the Greenfield Police Department in Wisconsin testified that, in September 2021, he was dispatched because of a complaint that defendant was observed with a U-Haul that had several dogs in crates.

-7-

Officer Triumph saw approximately 20 dogs, and he witnessed defendant attempting to clean some of the dogs that had feces and urine on them. Officer Triumph stated that none of the dogs seemed to be in poor health or overcrowded in their crates. Nonetheless, animal control was contacted and all of the dogs were confiscated, but they were later returned to defendant. No criminal charges were issued as a result of the incident.

Under MRE 404(b), other-acts evidence may be admitted for purposes "such as proving motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, absence of mistake, or lack of accident." MRE 404(b)(2). The prosecution contends that Officer Triumph's testimony was admissible to establish defendant's system in doing an act. The prosecution "must offer the 'prior bad acts' evidence under something other than a character or propensity theory," and "the evidence must be relevant under MRE 402," with probative value that is not "substantially outweighed by unfair prejudice under MRE 403." *People v Felton*, 326 Mich App 412, 425; 928 NW2d 307 (2018) (quotation marks and citations omitted). A trial court, "upon request, may provide a limiting instruction under MRE 105." *Id*. Further, "[o]ther-acts evidence may be admissible when the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system," but the "[m]ere similarity between the other-acts evidence and the charged conduct is not sufficient; rather, the effort is to establish a definite prior design or system which included the doing of the act charged as part of its consummation." *Id*. at 426 (quotation marks and citation omitted).

Our Supreme Court has cautioned that "a common pitfall in MRE 404(b) cases is that trial courts tend to admit other-acts evidence merely because the proponent has articulated a permissible purpose," but the mere "mechanical recitation of a permissible purpose, without explaining how the evidence relates to the recited purpose, is insufficient to justify admission under MRE 404(b)." *People v Denson*, 500 Mich 385, 400; 902 NW2d 306 (2017) (quotation marks and citations omitted). Here, the prosecution did not even offer a mechanical recitation of a permissible purpose. Regardless of whether Officer Triumph's testimony was inadmissible under MRE 404(b), though, defendant has not established how the exclusion of his testimony would have changed the outcome of her trial.

As we have already explained, the prosecution presented sufficient evidence of defendant's guilt, independent of whether Officer Triumph's testimony amounted to impermissible propensity evidence. Because defendant cannot show that the outcome of her trial would have been different if the evidence admitted pursuant to MRE 404(b) had been excluded, *Trakhtenberg*, 493 Mich at 51, defendant cannot prevail on her claim of ineffective assistance of counsel. Similarly, defendant has failed to demonstrate how a limiting instruction to the jury regarding her homelessness during the incidents would have changed the outcome of her trial, so she cannot obtain relief on her claim of ineffective assistance of counsel on that basis.

## D. CUMULATIVE ERROR

Defendant asserts that her trial counsel's cumulative errors in failing to object to the final jury instructions, failing to contest the admission of the MRE 404(b) evidence, and failing to ask for a limiting instruction regarding her homelessness deprived her of a fair trial. "The cumulative effect of several minor errors may warrant reversal where the individual errors would not." *People v Ackerman*, 257 Mich App 434, 454; 669 NW2d 818 (2003). But in order to reverse a conviction

for that reason, "the effect of the errors must [be] seriously prejudicial in order to warrant a finding that defendant was denied a fair trial." *People v Knapp*, 244 Mich App 361, 388; 624 NW2d 227 (2001). When there is strong evidence of a defendant's guilt and "no reasonable juror would have voted for acquittal if these errors did not occur," there is no basis for reversal of a conviction. *Id.*

The prosecution erred in writing the felony information and the notice of intent to introduce evidence pursuant to MRE 404(b), and the prosecution and the trial court both erred in addressing the "alternative" charge in the final jury instructions and the verdict form, but defendant has failed to establish that correction of any of those errors would have altered the result of defendant's trial. More importantly, as already addressed, the prosecution presented sufficient evidence establishing defendant's guilt, and defendant has not shown that correction of the cumulative errors would have resulted in a reasonable juror voting to acquit her. *Id.* Accordingly, defendant has not established that the claimed cumulative errors, taken together, warrant reversal of her conviction.

Affirmed.

/s/ Kristina Robinson Garrett
/s/ Sima G. Patel
/s/ Christopher P. Yates