# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CHRISTIAN WILLIAM HESS,

Defendant-Appellant.

UNPUBLISHED
January 19, 2017

No. 327890
Berrien Circuit Court
LC No. 2014-002613-FH

Before: SHAPIRO, P.J., and HOEKSTRA and SERVITTO, JJ.

SHAPIRO, P.J. (*dissenting*).

I respectfully dissent. There was not sufficient evidence of the elements of the charged crime. In addition, given that the majority affirms defendant's conviction, I believe we should hold this case in abeyance to consider the constitutionality of the 25 year SORA registration requirement after the Michigan Supreme Court issues a decision in *People v Temelkoski*, 498 Mich 942; 872 NW2d 219 (2015).

Defendant and the complainant went to the same high school; he was a 17 and a senior and she was 13 and a freshman. They became acquainted in December and began spending time together although there was no evidence of a sexual relationship for several months. The complainant's mother was a teacher at the school and, quite properly, did not want her daughter spending time with a boy 4 years her elder. She repeatedly told her daughter and defendant that they were to stop seeing each other. They each assured her that they would stop, but did not.

On March 3, 2014, during a high school basketball game, the complainant texted defendant who was also at the game, and they agreed to meet in the parking lot. Defendant borrowed his friend's car keys. He and the complainant got in the car, began kissing and, according to the complainant, had sexual intercourse. She testified that the idea of having sex was mutual and that she thought she wanted to have sex with defendant. She testified that when they began to have intercourse "it hurt, and I suggested we stop because it hurt. And he said that if we kept going that it wouldn't hurt anymore. So, I just agreed and we kept having sex." She later sent him a birthday card and gift with a note that included the sentence "we haven't had sex yet, that's your other present."

The complainant's mother began to suspect that her daughter may have had sex and on April 25, 2014, without telling her daughter where they were going, took the complainant to a

-1-

hospital emergency room to undergo a gynecological examination by a physician. At that point, the complainant confessed to her parents that she had had sex with defendant. The examination by the physician was consistent with her having had sex as was a later gynecological examination by a specialized nurse. A complaint was filed by the prosecutor, and defendant was charged with Criminal Sexual Conduct III, MCL 750.520d(1)(a) (penis-vagina penetration of a person at least 13 years of age and under 16 years of age). Defendant maintained that he and the complainant had not had sex and pointed to her birthday card as evidence because it said "we haven't had sex yet." The complainant explained in her testimony that this sentence referred to not having had sex for defendant's birthday and stated that they had already had sex on March 3, 2014.

Before trial, the prosecution, with leave of the court, added a count of accosting a minor, MCL 750.145a. The accosting a minor statute provides that:

> A person who accosts, entices, or solicits a child less than 16 years of age, regardless of whether the person knows the individual is a child or knows the actual age of the child, or an individual whom he or she believes is a child less than 16 years of age with the intent to induce or force that child or individual to commit an immoral act, to submit to an act of sexual intercourse or an act of gross indecency, or to any other act of depravity or delinquency, or who encourages a child less than 16 years of age . . . to engage in any of those acts is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $4,000.00, or both. [MCL 750.145a.]

The jury acquitted defendant of the CSC III charge but convicted him of the accosting charge. The trial judge sentenced defendant to five years of probation[1] with two days in jail. As a result of his conviction, defendant is required to register as a Tier II sexual offender for 25 years.

Defendant appeals on the grounds of insufficient evidence. Specifically, he argues that because the evidence at most shows a mutual and consensual sexual encounter he cannot be found to have "accosted, enticed or solicited" a minor to "submit to an act of sexual intercourse" as set forth in the statute. The prosecution's brief does not reply directly to this argument, making no mention of that aspect of the statute. Rather, the prosecution focuses on the alternative basis for conviction under the statute, which states that the crime is also committed when a person "encourages a child a child less than 16 years of age . . . to engage in any of these acts."[2]

---

[1] The court initially sentenced defendant to two years of probation but the minimum term of probation allowed for under MCL 771.2a(5) is five years and the court increased the term to comply with the statute.

[2] *People v Kowalski*, 489 Mich 488, 498-499; 803 NW2d 200 (2011).

In considering the application of the statute, as with any criminal statute, we must be mindful that our role demands that we determine only whether the evidence is sufficient to prove the elements of the crime; it is not our role to determine whether or not defendant's conduct was offensive, disrespectful or otherwise lacking in morality. I respectfully suggest that the majority loses sight of this distinction at times and that the language used in its opinion often has more connotation than content.

The majority states that "the evidence shows that defendant cultivated a relationship" and that he "pursued a relationship" with the complainant. I am not certain what these phrases are intended to mean. I do not believe that merely "cultivating a relationship" is evidence of accosting, enticing, soliciting, or encouraging a child to engage in sexual intercourse as many people, including high school students, "cultivate" or "pursue" relationships that are healthy and happy. The majority uses these phrases, however, to suggest that the defendant tricked or deceived the complainant. I would agree that if trickery, deception, offers of money or intimidation were used to influence the complainant to have sex with defendant that it would be evidence in support of this conviction. However, I cannot locate such evidence in the record. The complainant did not testify that defendant ever tried to trick or deceive her, to intimidate her or to offer her money or other payment and no such testimony was offered by any other witness. Similarly, the majority describes this "cultivation" as accomplished by "frequent communication via text and social media," but it does not provide the content of any of these communications. The majority also notes that defendant was "engaging in activities with the victim," but such activities amounted to going to the mall and basketball games together.

The majority also notes that on one occasion defendant and the complainant spent the night at a friend's house, sleeping on separate couches but that on a second occasion they shared a bed, albeit without have sexual relations. Notably, there was no testimony that defendant asked the complainant to have sex with him on either of those occasions. The prosecution suggests that defendant tried to impress the complainant with how popular and "cool" he was, but no evidence of this was offered at trial. Finally, the majority points out that defendant "endeavored to keep the relationship a secret." This overly board statement does not accurately reflect the record. Defendant did endeavor to keep the relationship a secret from the complainant's mother, just as the complainant herself did, given that her mother repeatedly punished her for spending time with defendant. However, there is no evidence that defendant attempted to keep from anyone else that he and the complainant were spending time together. The fact that the complainant's mother was deceived by defendant and by her daughter is not evidence of defendant accosting, enticing, soliciting, or encouraging the complainant to engage in sexual intercourse.

The majority concludes that defendant encouraged the complainant to have sex with him on March 3, 2014 and relies on three statements allegedly made by defendant. The first was before the subject of sexual intercourse was raised. The complainant had stated to defendant that her parents wanted her to stop seeing him, and he allegedly told her that things would be alright after she was 18. This was by no means a new topic of discussion as her mother always disapproved of the relationship and made this known in words and by punishment. There is no evidence that the statement was directed at sexual activity and the complainant did not describe it as such. The second statement took place after they began kissing in the back seat of the car. Defendant asked the complainant if she would have sex with him. There is no evidence that he attempted to cajole or convince her to do so, and I do not believe we can construe the question as

"encouraging," let alone accosting under these circumstances. Finally, after the complainant consented and they began to have intercourse, she said that it hurt and asked if they should stop, to which defendant responded by telling her that if they kept going it wouldn't hurt anymore. If this statement can be viewed as "encouragement" it can only be viewed as such in relation to continuing an act of sexual intercourse and not to undertaking one.

The majority opinion states that the fact that the complainant testified that the decision to have sex was mutual and that she wanted to do so[3] is irrelevant because persons between age 13 and age 16 "are legally incapable of consent." The majority has written too broadly in this regard. They are correct that consent is not a defense to a charge of CSC III involving a 13-16 year old. However, other statutes governing sexual crimes do recognize that a minor between 13 and 16 years can consent to sexual activity if the defendant and victim are within four years of age. For example, while CSC III, MCL 750.520d, is generally considered a tier III offense under SORA, MCL 28.722(w)(iv), requiring SORA registration, MCL 28.722(j) and MCL 28.723(1)(a), the SORA statute provides an exception if the defendant is not more than 4 years older than the victim, the victim is between 13 and 16, and the victim "consented to the conduct constituting the violation," MCL 28.722(w)(iv).[4]

The facts of *People v Kowalski*, 489 Mich 488; 803 NW2d 200 (2011), upon which the majority relies, were notably different than those of this case. In that case, the defendant was a 51 year old man trolling the internet for underage girls and engaging in sexual conversations with them in order to arrange to meet them for sex. *Id.* at 491-494. The facts of this case are also distinguishable from *People v Gaines*, 306 Mich App 289, 293-295; 856 NW2d 222 (2014) where there was evidence that the defendant had requested the complainants send him nude photographs of themselves and threatened to not speak to them or withhold his help at their track and field practice if they did not comply. Frequent and persistent requests for a child to engage in sexual activity are not comparable to a one-time suggestion about possibly engaging in such activity that is made in the heat of an intimate moment.

Additionally, the accosting statute appears to have been adopted with a different type of scenario, i.e. teenage prostitution, than is present here. The language "accosting, enticing or soliciting" is consistent with the language used in other statutes addressing prostitution. For example, MCL 750.448 states that "[a] person 16 years of age or older who accosts, solicits, or invites another person in a public place or in or from a building or vehicle, by word, gesture, or

---

[3] The majority does not reference the note sent by the complainant to defendant shortly after their sexual encounter in which she expresses the desire to again have sex with defendant.

[4] As will be discussed below, defendant's conviction for accosting subjects him to SORA registration for 25 years. Had he instead been convicted of CSC III, a charge for which he was acquitted, he would not be subject to SORA given the statutory exception herein discussed. Ironically, it is not unlikely that the accosting conviction was a compromise verdict between juror who believed defendant guilty of CSC III and those who believed he was not guilty of any charge as the accosting conviction rested on the act of sexual intercourse which alone was sufficient to convict on CSC III.

any other means, to commit prostitution . . . is guilty of a crime." Additionally, the legislature's 2002 amendment to the accosting statute, 2002 PA 45, 2001 HB 5449, provided that its passage was tie barred to Senate Bill No. 1029; a bill that became 2002 PA 46 and that revised MCL 750.449, which also addresses prostitution. The Senate Bill Analysis describing both bills, 2002 PA 45 and 2002 PA 46, states:

### RATIONALE

Early in 2001, the Lansing Police Department uncovered a prostitution ring that apparently involved girls ranging from 12 to 17 years of age. . . . After the discovery of this operation, scrutiny of State laws pertaining to prostitution identified a potential gap in the enforcement of various prostitution related offenses. . . .

Also, the discovery of the child prostitution ring in Lansing brought to public light a concern that the penalties for accosting or soliciting a child for purposes of prostitution [then a misdemeanor] might be insufficient.

* * *

### Supporting Argument

* * *

In addition, while criminal sexual conduct (CSC) laws prescribe stiff penalties . . . for those who force children to have sex, adults who seek out and pay for sex with young girls or boys faced only a misdemeanor charge . . . . [Senate Legislative Analysis, HB 5449, SB 1029, August 7, 2002.]

To conclude, I do not believe the alleged actions of defendant rose to the level of encouraging the complainant to engage in sexual activity with him. Therefore, I would reverse defendant's conviction for accosting a minor.

Finally, if we are to affirm defendant's convictions, I believe the twenty year SORA term may constitute cruel or unusual punishment for this crime. Accordingly, I would hold this case in abeyance to await the Michigan Supreme Court's decision in *People v Temelkoski*, 498 Mich 942; 872 NW2d 219 (2015), in which the Supreme Court heard oral arguments on December 7, 2016. The Supreme Court granted leave in that case to determine, among other things, "whether the requirements of [SORA] . . . amount to 'punishment.' " *Id.* The recent Sixth Circuit decision in *Doe v Snyder*, 834 F3d 696, 699-705 (CA 6, 2016) addressed this issue at length. Judge Batchelder, writing for a unanimous panel concluded that "Michigan's SORA imposes punishment." The *Doe* Court characterized the effect of SORA registration as follows:

[The] law has had a significant impact on each of [the registrants] that reaches far beyond the stigma of simply being identified as a sex offender on a public registry. As a result of the school zone restrictions, for example, many of the [registrants] have had trouble finding a home in which they can legally live or a job where they can legally work. These restrictions have also kept those

[registrants] who have children (or grandchildren) from watching them participate in school plays or on school sports teams, and they have kept [registrants] from visiting public playgrounds with their children . . . .[5] [Registrants] are also subject to the frequent inconvenience of reporting to law enforcement in person whenever they change residences, change employment, enroll (or unenroll) as a student, change their name, register a new email address or other "internet identifier," wish to travel for more than seven days, or buy or begin to use a vehicle (or cease to own or use a vehicle). [*Id.* at 698.]

The Court also characterized SORA registration as similar to "the ancient punishment of banishment." *Id.* at 701.

Publicly branding individuals as "convicted sex offenders" has devastating social consequences, as "[n]o other crime invokes such negative public perceptions." Quinn, Forsyth, & Mullen-Quinn, *Societal Reaction to Sex Offenders: A Review of the Origins and Results of the Myths Surrounding their Crimes and Treatment Amenability*, Deviant Behavior, 25:3 (2004), pp 215, 217. Harassment of registrants is common. A Department of Justice study found 77% of registrants had experienced threats or harassment. See Zevitz & Farkas, *Sex Offender Community Notification: Assessing the Impact in Wisconsin* (Washington DC: U.S. Department of Justice, Officer of Justice Programs, National Institute of Justice, 2000), p 9; and see Tewksbury, *Collateral Consequences of Sex Offender Registration*, Journal of Contemporary Criminal Justice, 21(1) (2005), p 76 (registrants experience assaults, harassment, job loss, housing denial, etc.).

A growing body of courts in states that have SORA statutes similar to ours, have recently concluded, despite earlier rulings to the contrary, that SORA constitutes a punitive rather than regulatory action. See, e.g., *Doe v New Hampshire*, 167 NH 382, 409-413; 111 A3d 1077 (2015) (holding that the sex offender "statute has changed dramatically . . . to the point where the punitive effects are no longer 'de minimis' "); *Doe v. State*, 189 P.3d 999, 1018 (Alas, 2008) ("we conclude that ASORA's effects are punitive, and convincingly outweigh the statute's non-punitive purposes and effects."); *Starkey v. Oklahoma Dep't of Corrections*, 305 P.3d 1004, 1030 (Okla, 2013) ("SORA's obligations have become increasingly broad and onerous. We find there is clear proof that the effect of the retroactive application of SORA's registration is punitive and outweighs its non-punitive purpose."); *Wallace v Indiana*, 905 NE2d 371, 382 (Ind, 2014) ('the non-punitive purpose of the Act, although of unquestioned importance, does not serve to render as non-punitive a statute that is so broad and sweeping"); *Kentucky v Baker*, 295 SW 3d 437, 447 (Ky, 2009) ("Although the General Assembly did not intend [the SORA statute] to be punitive, the residency restrictions are so punitive in effect as to negate any intention to deem them civil").[6]

---

[5] While the instant defendant has no children, given that the registration period is 25 years, it is likely he will during its term.

[6] But see, *People v Tucker*, 312 Mich App 645, 653-659; 879 NW2d 906 (2015).

-6-

In light of the growing number of state courts that have found SORA statutes similar to Michigan's to be punitive rather than regulatory and given our Supreme Court's recent decision to visit this issue, *Temelkoski*, 498 Mich at 942, if we were to affirm defendant's convictions, I would hold this case in abeyance pending the Supreme Court's decision in *Temelkoski*.


/s/ Douglas B. Shapiro