# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* A. M. PATINO, Minor.

UNPUBLISHED
August 29, 2017

No. 336948
Bay Circuit Court
Family Division
LC No. 15-011946-NA

Before: BOONSTRA, P.J., and RONAYNE KRAUSE and SWARTZLE, JJ.

PER CURIAM.

Respondent-mother appeals by right the trial court's order terminating her parental rights to her minor child, AM, under MCL 712A.19b(3)(b)(*i*) (physical abuse by parent), (c)(*i*) (conditions leading to adjudication continue to exist), (c)(*ii*) (new conditions that would lead to adjudication exist), (g) (failure to provide proper care and custody), (h) (parental incarceration without provision for care and custody), (j) (reasonable likelihood the child will be harmed if returned to the parent), and (m) (parent's rights to other children voluntarily terminated during proceedings involving serious abuse).[1] We affirm. While the trial court erred in its findings regarding some statutory grounds, other statutory grounds supported terminating respondent's parental rights and termination was in AM's best interests.

## I. FACTS

In July 2015, petitioner requested the trial court to remove the child on the basis that AM's half-brother was born testing positive for cocaine and opiates and was suffering severe withdrawal symptoms. Petitioner alleged that respondent admitted to a history of substance abuse and relapsing while pregnant. After a preliminary examination, the trial court authorized the petition on the basis that respondent's substance abuse placed both children at risk. Respondent ultimately admitted responsibility to being treated for substance abuse and relapsing during pregnancy, and she admitted responsibility via a no contest admission to using cocaine late in her pregnancy. The trial court placed the child with the Department of Health and Human Services (DHHS) for care and supervision.

---

[1] The trial court also terminated the parental rights of AM's father, who is not a party to this appeal.

-1-

At the time of the adjudication, respondent was in jail. The trial court instructed respondent to contact AM's foster-care worker, Melissa Gilmore, as soon as she was released from jail to "get into every service you possibly can." Gilmore reported that respondent went missing after she was released from jail in late December 2015, resurfacing in March 2016, when she was again incarcerated. During that time, AM asked about respondent and felt lonely, sad, and abandoned. In February 2016, Gilmore reported that AM also disclosed incidents of physical abuse, including that respondent "whipped him with a metal belt" and yelled at a boyfriend to hit him harder.

The child's therapist, Cara Camp, reported that respondent began exchanging letters with AM, which Camp stated was helpful to the child in terms of his therapy. At the termination hearing, Camp testified that the letters became shorter and more intermittent over the summer. Gilmore reported that in October and November of 2016, AM indicated that he had not heard from respondent in a while. Respondent began writing regular letters again in December 2016. Camp reported that AM had clearly indicated he did not "ever want to live with" respondent.

On November 9, 2016, petitioner sought to terminate respondent's parental rights under MCL 712A.19b(3)(b)(i), (c)(i), (c)(ii), (g), (h), (j), and (m). Petitioner alleged that she had failed to maintain suitable housing, neglected AM's physical and emotional needs, and had not followed through with her treatment plan. Petitioner additionally alleged that respondent would be incarcerated for a minimum of 36 months, had failed to provide for AM's care, and was not likely to do so within a reasonable time. Finally, the prosecution added that respondent had voluntarily terminated her rights to AM's half-brother during the protective proceedings.

At the termination hearing, respondent testified that she had begun participating in services that were offered in jail, including a domestic violence class, drug counseling, and group therapy. Respondent testified that she had "a little less than 26 months left" on her sentence, but insisted she would be available to take care of AM immediately on her release. Respondent also testified that it was possible that she would be accepted into a program with guaranteed parole as soon as she completed the program, which could mean she would be released in four months.

Gilmore and Camp testified about the needs of AM, who was then almost 11 years old. Camp opined that AM had improved significantly in treatment but still suffered from attachment trauma and emotional difficulties. Camp testified that respondent's inconsistent participation with AM had caused "a huge disruption" for AM and led him to feel "incredibly rejected" by respondent. Camp opined that termination was in AM's best interests because he needed permanency, structure, stability, and a loving and supportive family. While AM had special needs, Camp was confident that he could attain permanency. Gilmore testified that finding a long-term placement for AM would be difficult, but she believed she could find him an appropriate home.

The trial court found that respondent was incarcerated with a minimum of 26 months remaining on her sentence and that it was not likely that she would be released in the near future. It found that respondent's only stable housing had been in jail. It also found that she had released her parental rights to AM's half-brother during the proceedings. The trial court addressed that respondent had not voluntarily participated in services early in the case and, after services were court-ordered, respondent had participated inconsistently and intermittently.

Addressing the statutory grounds, the trial court found that petitioner had proven MCL 712A.19b(3)(b)(*i*) because AM was physically abused by respondent-father and his half-brother's father, and respondent "testified . . . that she knew it was occurring." It found that petitioner had proven there was no reasonable likelihood the conditions that led to adjudication would change, § 19b(3)(c)(*i*), or that there was no reasonable likelihood that other conditions, for which respondent had received recommendations on how to rectify, would be rectified in the near future, § 19b(c)(*ii*). The trial court also found that petitioner had proven § 19b(3)(g) because respondent was unable to maintain stable housing or meet AM's physical and emotional needs and she had not participated in the treatment plan, had proven § 19b(3)(h) because respondent would likely be incarcerated for "at least . . . over two years," and had proven § (3)(j) because AM could not be returned to respondent's home because her home was prison. Finally, the trial court found that petitioner had proven § 19b(3)(m) because respondent had voluntarily terminated her rights to AM's half-brother during the proceedings.

The trial court also found that termination was in AM's best interests. It noted that AM had stated that he did not want to live with respondent. It found that being available for adoption was AM's best opportunity for permanency, stability, and a loving home. Accordingly, it ordered respondent's parental rights terminated.

## II. STATUTORY GROUNDS

This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). A finding is clearly erroneous if, after reviewing the entire record, this Court has the definite and firm conviction that the trial court made a mistake. *Id*. The petitioner has the burden to prove the existence of a statutory ground by clear and convincing evidence. *Id*. Clear and convincing evidence is "evidence so clear, direct and weighty and convincing as to enable [the fact-finder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *In re Martin*, 450 Mich 204, 227; 538 NW2d 399 (1995) (quotation marks and citation omitted; alteration in original).

### A. MCL 712A.19b(3)(b)(*i*)

MCL 712A.19b(3)(b) provides that the trial court may terminate a parent's rights if

The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

(*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

(*ii*) The parent who had the opportunity to prevent the physical injury or physical or sexual abuse failed to do so and the court finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home.

In this case, the trial court found that AM was physically abused by respondent-father and the father of his half-brother, and respondent "testified today to this Court that she knew it was occurring." Therefore, the trial court found, respondent had participated in the abuse by inaction. This finding is based on subsection (b)(*ii*), not (b)(*i*). The trial court clearly erred by finding MCL 712A.19b(3)(b)(*i*) supported termination.[2]

## B.  MCL 712A.19b(3)(c)(*i*)

Respondent contends that MCL 712A.19b(3)(c)(*i*) did not support terminating her parental rights because none of the allegations in the initial petition concerned AM, and she participated in services.

MCL 712A.19b(3)(c)(*i*) provides that the trial court may terminate a parent's rights if there is clear and convincing evidence that "[t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." This statutory ground exists when the conditions that brought the children into foster care are not reasonably likely to be rectified despite "time to make changes and the opportunity to take advantage of a variety of services . . . " See *Powers*, 244 Mich App at 119.

First, respondent's assertion that the initial petition did not concern AM lacks merit. The trial court found that respondent's history of substance abuse and relapse was one of the reasons the trial court authorized the petition, and the trial court specifically found that respondent's drug use put both AM and his half-brother at risk. The initial petition in this case alleged that AM had been born testing positive for marijuana and that respondent had a previous case involving the child's half-brother. Respondent pleaded no contest to having a prior history of substance abuse and to having a prior CPS history. At the preliminary hearing, Child Protective Services worker Kristy Dickhausen testified that AM was born in 2006 with drugs in his system. Accordingly, respondent's assertion that the initial petition did not concern AM lacks merit.

Second, respondent's argument that she participated in services also lacks merit. The trial court found that respondent had failed to avail herself of services. Gilmore testified that respondent was unsuccessfully discharged from substance abuse services and never followed through on parenting education. Nor did she follow through on her referral to a psychologist, and she did not receive mental health counseling. Respondent was ordered to immediately contact Gilmore on her release from jail and participate in services after her adjudication on December 4, 2015. Gilmore testified that after respondent was released on December 23, 2015, she failed to contact Gilmore and went missing until she was incarcerated again in March 2016. Respondent admitted that after she was released from prison, she did not contact Gilmore.

---

[2] Moreover, we are unable to find any place in the record in which respondent-mother testified that she knew that AM was being physically abused.

Even presuming that respondent participated in services offered in the Bay County Jail, which she testified included church, domestic violence class, drug counseling, and group therapy, the evidence of respondent's participation began too late. Respondent's participation with jail services began in January 2017, more than a year after services became court-ordered. And the record is devoid of evidence that respondent benefited from those services to such a degree that it could be said she had successfully addressed the relevant issues. AM was in foster care beginning in July 2015. Children should not have to wait for long periods in foster care for "the mere possibility of a radical change in [the parent's] life." *In re Williams*, 286 Mich App 253, 273; 779 NW2d 286 (2009).

## C. MCL 712A.19b(3)(c)(*ii*)

Respondent contends that no legally admissible evidence supported the trial court's finding that MCL 712A.19b(3)(c)(*ii*) existed because only hearsay supported the existence of this ground. The alleged hearsay came in the form of AM's disclosures that respondent whipped him with a metal belt and yelled at a boyfriend to hit AM harder, which were contained in a February 2016 case-service plan report. The trial court asked counsel whether counsel had any objections before admitting this report. Respondent's counsel responded, "I have no objection to them. My client, obviously, has none since I haven't been able to forward them to her." Counsel asked for the opportunity for respondent to place any objection she had in writing, which the trial court granted. Respondent never offered any such objections. Counsel's affirmative statement that she had no objections to admitting the report constituted a waiver that extinguished any alleged error in the trial court's reliance on it. *People v Kowalski*, 489 Mich 488, 504-505; 803 NW2d 200 (2011).

## D. MCL 712A.19b(3)(g)

Respondent contends that the trial court clearly erred when it found that MCL 712A.19b(3)(g) supported terminating her parental rights because the trial court improperly used her lack of participation before her adjudication against her and she later participated in services.

MCL 712A.19b(3)(g) provides that the trial court may terminate a parent's rights if "[t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." A parent's failure to comply with his or her service plan is evidence that the parent will not be able to provide a child with proper care and custody. *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014). A parent's inability to maintain appropriate housing may also support terminating parental rights under this statutory ground. See *In re Trejo Minors*, 462 Mich 341, 361; 612 NW2d 407 (2000).

The trial court found that respondent participated only intermittently and inconsistently in services once they were ordered, that she had 26 months to demonstrate progress and had not, and that she lacked stable housing. In addition, all the information in section C above supports the trial court in this finding.

The trial court's findings were not clearly erroneous and supported terminating respondent's parental rights under MCL 712A.19b(3)(g).

## E. MCL 712A.19b(3)(h)

Respondent contends that the trial court erroneously terminated her parental rights under MCL 712A.19b(3)(h) because there was a strong possibility that she would be released from prison early and be able to care for the child.

MCL 712A.19b(3)(h) provides that the trial court may terminate a parent's rights if

[t]he parent is imprisoned for such a period that the child will be deprived of a normal home for a period exceeding 2 years, and the parent has not provided for the child's proper care and custody, and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

This statutory ground contains three separate requirements—that the parent be incarcerated for a period exceeding 2 years, that the parent has not provided for the child's care and custody, and that there is no reasonable expectation the parent will be able to do so within a reasonable time. *Mason*, 486 Mich at 161. The parent's incarceration is not decisive. *Id*. For example, *Mason* found error in the trial court's failure to consider that the respondent-father had placed the children with his family to care for them while he was incarcerated. *Id*. at 163. Additionally, the respondent-father had arranged for housing and income after imprisonment. *Id*.

In this case, respondent testified that her minimum term of remaining imprisonment was "a little less than 26 months[.]" Respondent testified that she had applied for an early release program, but had not yet been accepted into it. Respondent's assertion that it likely she would be released early is purely conjecture. The record supported the trial court's finding that respondent would likely be incarcerated for more than two years.

Further, no relatives were willing to take placement of AM while respondent was in jail. Gilmore testified that petitioner had investigated the possibility of placing AM with respondent's sister, who "felt they could not follow through . . . and asked [Gilmore] not to complete the home study[.]" Gilmore investigated placement with respondent-father's sister, but the home study was denied because of the sister's prior CPS history. Respondent's more distant relatives on her father's side were not interested in placement.

Finally, Gilmore testified about the services that she offered that respondent did not complete or did not participate in consistently. The record thus supported the trial court's finding that it was not reasonably likely that respondent would be able to provide the child with proper care and custody when released from prison.

## F. MCL 712A.19b(3)(j)

MCL 712A.19b(3)(j) provides that the trial court may terminate parental rights if "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." In this case, the trial court found that MCL 712A.19b(3)(j) supported terminating respondent's parental rights because respondent did not have a home to which the child could be returned. This was the trial court's

sole finding in support of this statutory ground. The trial court's findings were insufficient because the trial court did not address any possibility of harm to the child, which is the focus on MCL 712A.19b(3)(j).

### G. MCL 712A.19b(3)(m)

MCL 712A.19b(3)(m) provides that the trial court may terminate parental rights under the following circumstances:

> The parent's rights to another child were voluntarily terminated following the initiation of proceedings under [MCL 712A.2(b)] or a similar law of another state and the proceeding involved abuse that included 1 or more of the following:
>
> (*i*) Abandonment of a young child.
>
> (*ii*) Criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate.
>
> (*iii*) Battering, torture, or other severe physical abuse.
>
> (*iv*) Loss or serious impairment of an organ or limb.
>
> (*v*) Life-threatening injury.
>
> (*vi*) Murder or attempted murder.
>
> (*vii*) Voluntary manslaughter.
>
> (*viii*) Aiding and abetting, attempting to commit, conspiring to commit, or soliciting murder or voluntary manslaughter.
>
> (*ix*) Sexual abuse . . . [under] MCL 722.622.

In this case, the trial court found that this statutory ground applied because respondent had released her parental rights to AM's half-brother. The trial court did not make any other findings in support of this statutory ground, including whether any of the subparts concerning severe abuse were met. Accordingly, the trial court clearly erred because its factual findings were insufficient to support termination under MCL 712A.19b(3)(m).

### H. HARMLESS ERROR

This Court need not reverse the termination of respondent's parental rights on the basis that the trial court erred by finding that MCL 712A.19b(3)(b)(*i*), (j), and (m) supported termination. These errors are harmless because the other cited statutory factors do support termination. See *In re Powers Minors*, 244 Mich App 111, 118; 624 NW2d 472 (2000) (stating if one statutory ground supports terminating a parent's parental rights, error in another statutory ground is harmless).

-7-

## III. BEST INTERESTS

Respondent contends that termination was not in AM's best interests because she took appropriate care of him before foster care, he had special needs and would not likely be adopted, and he and respondent shared a close bond.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). To determine whether termination of a parent's parental rights is in a child's best interests, the court should consider a wide variety of factors that may include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). The trial court may also consider "the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *White*, 303 Mich App at 714 (citations omitted).

Respondent's assertion that she and AM were strongly bonded lacks support on this record. Gilmore testified that respondent attended only about half of her parenting visits before her incarceration and went missing in late 2015 until she was incarcerated again in March 2016. Camp testified that AM struggled when respondent went missing. She explained that not hearing from her for months caused AM to feel rejected, depressed, and lonely. Camp reported that AM stopped responding to respondent's letters, and that AM indicated that he did not want to live with respondent.

Respondent's assertion that AM was not likely to be adopted similarly lacks merit. Gilmore acknowledged that finding an appropriate placement for AM would be difficult, but she believed she would be able to find him an appropriate long-term home. Camp testified that AM could be very successful in a foster home. Camp also testified that it was always more difficult to find a placement for a child with special needs, but she was "confident that permanency can be found for AM and that a foster home will be identified for him." A review of the record indicates that despite his behavioral and emotional difficulties, AM was not without prospects for a permanent home.

Finally, the trial court properly considered the remainder of AM's circumstances when determining whether termination was in his best interests. Gilmore testified that the lack of stability was causing AM "mental anguish[.]" Camp testified that being moved from parent to parent had caused AM attachment trauma. Gilmore testified that AM primarily needed closure

and permanency. Camp also testified that AM needed permanency, structure, stability, and a loving and supportive family. The balance of factors on the record supported the trial court's finding that AM needed permanence and stability that he would not find in respondent's care.

Affirmed.

/s/ Mark T. Boonstra
/s/ Amy Ronayne Krause
/s/ Brock A. Swartzle