*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
December 29, 2022

Plaintiff-Appellee,

v

No. 359800
Calhoun Circuit Court
LC No. 2020-000008-FH

NOBLE DAVID VATER II,

Defendant-Appellant.

Before: CAVANAGH, P.J., and K. F. KELLY and GARRETT, JJ.

PER CURIAM.

A jury convicted defendant, Noble David Vater II, of two counts of resisting and obstructing a police officer, MCL 750.81d(1), and one count of assault and battery, MCL 750.81(1). Vater's sentence included court costs. Vater seeks reversal of his convictions and vacatur of the court costs, arguing that the trial court improperly instructed the jury, that insufficient evidence supported his resisting and obstructing convictions, and that the statute authorizing court costs is unconstitutional. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This case stems from Vater's arrest in Calhoun Circuit Court Judge Brian Kirkham's courtroom. Vater had a child custody case before Judge Kirkham and was upset with how Judge Kirkham was handling the case. Vater sat in Judge Kirkham's courtroom over a two-week period observing various proceedings, although he did not have a case on the docket during that time. On December 9, 2019, at the conclusion of the morning docket, Vater approached the bench as Judge Kirkham was exiting the courtroom. Judge Kirkham's bailiff, Officer Crystal Watson, was still present. Additionally, a Friend of the Court employee, Jeffrey Chapman, was standing at the podium after finishing arraignments. Vater stood up and walked through the swinging doors into the area limited to authorized personnel, stating that he needed to speak with the judge.

Officer Watson placed her body between the judge and Vater, telling Vater that he could not follow the judge into chambers. Vater continued to repeat that he needed to speak with the judge, while Officer Watson continued to refuse him access. Officer Watson then told Vater that he needed to leave. Chapman did the same. Vater refused to leave, called Officer Watson and

-1-

Chapman liars, and continued to demand to speak with the judge. Christy Woodard, judicial clerk to Judge Kirkham, was sent into the courtroom by the judge to check on the bailiff because the judge heard a conflict. Woodard entered the courtroom and observed Vater two feet in front of Officer Watson, yelling at her. Woodard also told Vater that he needed to leave. Vater did not comply, so Woodard and Officer Watson called for security.

Deputy Matthew Hartig, Corrections Deputy for the Calhoun County Sheriff's Office, responded to the call for assistance within about two minutes. He observed Vater in a verbal confrontation with Woodard and Officer Watson. Deputy Hartig asked Woodard and Officer Watson if Vater needed to leave. Both confirmed that he did need to leave and that he had attempted to get past them to chambers. Deputy Hartig directed Vater to turn around and place his hands behind his back. Vater responded, "no, sir," and attempted to step toward the chambers door. Deputy Hartig took control of Vater's arm, but Vater was pulling away from him and fell on top of Deputy Hartig on the floor. Deputy Hartig called out for assistance.

Chapman tried to intervene by pulling Vater off Deputy Hartig. Vater bit Chapman on the right arm. Chapman and Deputy Hartig could not gain control of Vater. Deputy Teddy Warden, employed by the Calhoun County Sheriff's Office as court security, arrived to see Chapman and Deputy Hartig "tussling" with Vater on the floor. Deputies Warden and Hartig gave loud verbal commands to Vater to stop resisting, and Deputy Warden tried to take control of Vater's left arm. Vater continued to resist, keeping his arms tucked under his chest. Deputy Hartig warned Vater that if he did not comply he would be tased. Vater refused to comply, and Deputy Hartig tased him. Vater continued to struggle with the officers after he was tased.

Lieutenant Matthew Gault, who at that time was working as a transport sergeant for the Calhoun County Sheriff's Office, arrived after Vater was tased. Lieutenant Gault observed the officers and Chapman struggling with Vater. He also observed Vater ignore the officers' commands and continue to struggle. Lieutenant Gault delivered two brachial plexus stuns to Vater's neck that were meant to secure control of Vater. Simultaneously, Deputy Hartig delivered a second Taser stun to Vater. Vater finally complied with the officers' commands and was handcuffed. Lieutenant Gault interviewed Vater after he was transported to jail. Vater admitted that his intention was to confront Judge Kirkham and that he was attempting to step around Officer Watson to access the judge's chambers.

At trial, the prosecution presented testimony from the relevant witnesses and played courtroom video of the incident for the jury. The jury acquitted Vater of one count of resisting and obstructing as to Lieutenant Gault, but convicted him of two counts of resisting and obstructing as to Deputy Hartig and Deputy Warden. He was also convicted of one count of assault and battery on Chapman. The trial court sentenced Vater to 18 months' probation and imposed court costs of $440. Vater now appeals as of right.

## II. JURY INSTRUCTIONS

First, Vater argues that the trial court failed to properly instruct the jury by omitting an element of the resisting and obstructing charge. "A criminal defendant has a constitutional right to have a jury determine his or her guilt from its consideration of every essential element of the charged offense." *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011). Thus, "[j]ury

instructions must include all the elements of the charged offense, and must not exclude material issues, defenses, or theories if the evidence supports them." *People v Kosik*, 303 Mich App 146, 155; 841 NW2d 906 (2013). The elements for resisting and obstructing are (1) "the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer," (2) "the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties," and (3) that the officer's actions were lawful. *People v Quinn*, 305 Mich App 484, 491-492; 853 NW2d 383 (2014) (quotation marks and citation omitted). For the third element, the prosecution must prove beyond a reasonable doubt that the officer "gave the defendant a lawful command, was making a lawful arrest, or was otherwise performing a lawful act." M Crim JI 13.1. The trial omitted this third element of the resisting and obstructing offense during each reading of its instructions to the jury.

Vater, however, waived any claim of instructional error. Waiver is distinct from forfeiture. Waiver is "the intentional relinquishment or abandonment of a known right," whereas "forfeiture is the "failure to make the timely assertion of a right." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (quotation marks and citations omitted). A defendant "who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *Id*. (quotation marks and citations omitted). This Court has "consistently held that an affirmative statement that there are no objections to the jury instructions constitutes express approval of the instructions, thereby waiving review of any error on appeal." *People v Kowalski*, 489 Mich 488, 505 n 28; 803 NW2d 200 (2011). Put differently, "[w]hen the trial court asks whether a party has any objections to the jury instructions and the party responds negatively, it is an affirmative approval of the trial court's instructions." *People v Miller*, 326 Mich App 719, 726; 929 NW2d 821 (2019). "The failure to object, on the other hand, qualifies as forfeiture and is reviewable for plain error." *People v Hershey*, 303 Mich App 330, 349; 844 NW2d 127 (2013).

Before voir dire, the trial court gave the erroneous resisting-and-obstructing instruction to the jury. When asked by the trial court before and after jury selection whether he had any corrections or objections to the instructions, Vater responded, "None that I see, your Honor," and "No, your Honor."[1] After the close of proofs, the trial court provided both parties with printouts of the proposed final jury instructions. The court asked Vater before and after reading the final instructions to the jury whether he had any objections, and both times he stated, "No, your Honor." These statements constituted clear and affirmative satisfaction with the trial court's instructions. Consequently, "by expressly and repeatedly approving the jury instructions on the record,

---

[1] Vater inaccurately suggests he did not waive the error that occurred during opening instructions because he merely failed to object. The record shows that he affirmatively approved of the instructions.

-3-

defendant waived any objection to the erroneous instructions, and there is no error to review." *Kowalski*, 489 Mich at 504.[2]

## III. SUFFICIENCY OF THE EVIDENCE

Next, Vater argues that there was insufficient evidence to support his resisting and obstructing convictions because the prosecution failed to prove that the officers' actions were lawful. We review claims of insufficient evidence de novo. *People v Kanaan*, 278 Mich App 594, 618; 751 NW2d 57 (2008). That means "we review the issues independently, with no required deference to the trial court." *People v Beck*, 504 Mich 605, 618; 939 NW2d 213 (2019). Due process requires the prosecutor to introduce evidence sufficient for a trier of fact to find the defendant guilty beyond a reasonable doubt. *Jackson v Virginia*, 443 US 307, 318; 99 S Ct 2781; 61 L Ed 2d 560 (1979); *People v Hampton*, 407 Mich 354, 368; 285 NW2d 284 (1979). When reviewing a sufficiency of the evidence claim, the question is "whether, after viewing the evidence in a light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 US at 319. Circumstantial evidence and the reasonable inferences that arise from the evidence can constitute satisfactory proof of the elements of the crime. See *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). The reviewing court "must defer to the fact-finder's role in determining the weight of the evidence and the credibility of the witnesses and must resolve conflicts in the evidence in favor of the prosecution." *People v Savage*, 327 Mich App 604, 614-615; 935 NW2d 69 (2019) (quotation marks and citation omitted).

As stated, the prosecution had the burden to prove beyond a reasonable doubt that Deputies Hartig and Warden gave Vater a lawful command, were making a lawful arrest, *or* were otherwise performing a lawful act. See M Crim JI 13.1. The evidence at trial, when viewed in a light most favorable to the prosecution, established that Deputies Hartig and Warden were acting within the scope of their duties and gave Vater lawful commands. Upon arriving in the courtroom, Deputy Hartig observed Vater arguing with court staff. Deputy Hartig asked Woodard and Officer Watson if Vater needed to leave, and they confirmed that Vater needed to leave and that he was trying to get past staff to confront the judge. At that point, Deputy Hartig instructed Vater to turn around and place his hands behind his back. Vater refused, tried to step toward the chambers door, and pulled away from Deputy Hartig as he tried to grab Vater's arm.

Viewed in a light most favorable to the prosecution, there was sufficient evidence that Deputy Hartig made the initial decision to arrest because of the threat to Judge Kirkham and his

---

[2] We recognize that the cited cases involved an express approval of jury instructions by the defendant's *counsel*, and that here, Vater represented himself. Vater does not argue that a different waiver standard should apply in this context for self-represented defendants, and thus for purposes of this opinion, we assume without deciding that the same waiver rule applies. That said, we note that the trial court warned Vater of the risks of self-representation—as it was required to do— when inquiring into Vater's waiver of his right to counsel. See MCR 6.005(D)(1); *People v Anderson*, 398 Mich 361, 368; 247 NW2d 857 (1976). The court also advised Vater before trial that it was going to "hold [him] to the same standard as [it] would a lawyer," to which Vater responded, "I understand that."

staff and because Vater refused to comply with Deputy Hartig's lawful command. See *People v Champion*, 452 Mich 92, 115; 549 NW2d 849 (1996) ("Probable cause to arrest exists where the facts and circumstances within an officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed."). Deputy Hartig received information from court staff that Vater was attempting to reach Judge Kirkham and that he refused to leave. Deputy Hartig also observed Vater in a verbal confrontation with court staff. Deputy Hartig performed his legal duty to protect the judge and court staff by giving Vater the lawful instruction to place his arms behind his back when he refused to leave the courtroom. Vater affirmatively refused to comply and actively resisted Deputy Hartig's efforts to arrest him. Accordingly, a rational fact-finder could conclude beyond a reasonable doubt that Deputy Hartig "gave the defendant a lawful command, was making a lawful arrest, or was otherwise performing a lawful act." M Crim JI 13.1.

There was also sufficient evidence to support the resisting and obstructing conviction involving Deputy Warden. Deputy Warden entered the courtroom after the struggle between Chapman, Deputy Hartig, and Vater ensued. He observed Vater physically struggling with Deputy Hartig and Chapman on the ground. Deputy Warden gave Vater loud verbal commands to stop resisting and tried to take control of one of Vater's arms. Vater did not comply with these commands. Again, the evidence at trial establishes that a reasonable trier-of-fact could find sufficient evidence that Vater resisted a lawful command of Deputy Warden. Viewed in the light most favorable to the prosecution, the evidence was sufficient for the jury to conclude beyond a reasonable doubt that Vater refused to obey lawful commands by Deputies Hartig and Warden. Thus, Vater has not established that there was insufficient evidence to support his convictions.

## IV. COURT COSTS

Finally, Vater argues that the assessment of $440 in court costs must be vacated because the authorizing statute, MCL 769.1k(1)(b)(*iii*),[3] violates due process and the separation of powers. As Vater recognizes, however, this Court recently upheld the constitutionality of MCL 769.1k(1)(b)(*iii*) in *People v Johnson*, 336 Mich App 688; 971 NW2d 692 (2021), lv gtd 976 NW2d 862 (2022). We are bound by this decision under the rule of stare decisis. MCR 7.215(C)(2). And our Supreme Court's "order granting leave to appeal does not diminish the precedential effect of a published opinion of the Court of Appeals." *Id*. Thus, Vater's argument is foreclosed by this Court's holding in *Johnson*.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly
/s/ Kristina Robinson Garrett

---

[3] MCL 769.1k(1)(b)(*iii*) provides that following a guilty verdict, the trial court may impose "any cost reasonably related to the actual costs incurred by the trial court without separately calculating those costs involved in the particular case . . . ."