*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DWAYNE DEMETRIOUS WILLIAMS,

        Defendant-Appellant.

UNPUBLISHED
April 20, 2023

No. 359546
Ingham Circuit Court
LC No. 20-000508-FC

Before: GADOLA, P.J., and PATEL and MALDONADO, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial conviction of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(a) (sexual penetration with a victim at least 13 and less than 16 years of age).[1] The trial court sentenced defendant to serve 35 to 180 months' imprisonment and ordered him to register and comply with the Sex Offenders Registration Act (SORA), MCL 28.721 *et seq*. We affirm.

## I. BACKGROUND

This case arises out of the sexual assault of a minor victim that occurred in January 2018. The victim testified that defendant was her uncle by marriage. When she was approximately 14 years old, defendant picked her up from her mother's home and brought her to defendant's apartment. While at the apartment, defendant handed her a glass of liquor and encouraged her to drink it. She drank some of the liquor, and shortly thereafter began to feel dizzy. Defendant then helped her off of the stool on which she was sitting, walked her to his bedroom, and helped her sit on the bed. Defendant then took pictures of the victim. Her clothes were eventually removed, though she stated that she could not remember who had removed them because she was "in and

---

[1] The jury found defendant not guilty of two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(f) (coerced or forced sexual penetration causing personal injury to victim) and one additional count of CSC-III. Additionally, the trial court dismissed two counts of fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e.

out of it." The victim testified that defendant then joined her in the bed and sexually penetrated her vagina with his penis. She believed that defendant had anally penetrated her with his penis as well, but she admitted on cross-examination that she could not recall it and that she did not mention anal penetration in the description of the assault that she gave the police.

The prosecution presented an audio recording of defendant's interview with a detective in which he addressed the victim's sexual assault allegations. In his interview, defendant admitted that he sexually penetrated the victim and that he sent her some text messages that he "shouldn't have" after he believed he contracted a sexually transmitted infection from her. Defendant testified on his own behalf, and his testimony primarily addressed the statements that he made during his interview. Defendant testified that at some point after he brought the victim to his apartment, he was surprised to find her naked in his bed. Defendant further testified that he did not "know what to do," so he removed his clothes and joined her in bed. While defendant testified that he could not "recall" whether he penetrated the victim with his penis, he also stated that he was being truthful during his interview with the detective, during which he told the detective that he penetrated the victim with his penis. Defendant also testified that he and the victim were "going at it" during which he "probably" ejaculated.

The jury found defendant guilty of the lesser count of CSC-III, but it acquitted him of two counts of CSC-I and one count of CSC-III. At sentencing, defendant stated that he had reviewed the presentence investigation report (PSIR) with his trial counsel before the hearing. The PSIR included information about the victim's initial disclosure of the assault to the police, and it indicated that defendant was required to register as a sex offender under SORA and that defendant registered as a sex offender on October 14, 2021. The trial court asked if there were any inaccuracies in the PSIR, and defendant stated that the only inaccuracy that warranted a change was his address. Defendant also stated that he agreed with all of the offense variable (OV) scores, and he did not make any objection. After the prosecution, defense counsel, and defendant all addressed the trial court, the court sentenced defendant to serve 35 to 180 months' imprisonment for CSC-III and ordered him to register and comply with SORA. This appeal followed.

## II. DEFENSE COUNSEL'S ADMISSION OF GUILT

Defendant argues that his trial attorney unilaterally conceded guilt to the lesser charge of CSC-III in violation of his Sixth Amendment right to autonomy in his choice of defense under *McCoy v Louisiana*, ___ US ___; 138 S Ct 1500; 200 L Ed 2d 821 (2018). We disagree.[2]

This Court reviews constitutional questions de novo, and if structural error occurred then "automatic reversal is required." *People v Swilley*, 504 Mich 350, 370; 934 NW2d 771 (2019) (quotation marks and citations omitted). However, because the issue was not raised in the trial

---

[2] We note that defendant has *not* raised a claim of ineffective assistance of counsel. Indeed, defendant states in his brief that "the ineffective-assistance-of-counsel analysis is inapplicable . . . ." Rather, defendant's argument on appeal is based solely on the United States Supreme Court's decision in *McCoy*. Therefore, the *Strickland* test for ineffective assistance of counsel has not been applied. See *Strickland v Washington*, 466 US 668, 688; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

court, it is unpreserved. *People v Green*, 322 Mich App 676, 681; 913 NW2d 385 (2018). Unpreserved issues are reviewed for plain error affecting substantial rights, and a plain error occurs if three requirements are "met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999) (citation omitted). Even if the three requirements are met, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763 (quotation marks, citation, and alteration omitted).

The Sixth Amendment grants the accused in criminal prosecutions the right to "the assistance of counsel for his defense." US Const, Am VI. The United States Supreme Court has held that compliance with the Sixth Amendment dictates that defense counsel cannot concede a defendant's guilt over the defendant's objections. *McCoy*, ___ US at ___; 138 S Ct at 1505. "Autonomy to decide that the objective of the defense is to assert innocence belongs" to the defendant. *Id*. at 1508. "Because a client's autonomy, not counsel's competence, is in issue," the test for ineffective assistance of counsel does not apply. *Id*. at 1510-1511. If the defendant "declines to participate in his defense, then an attorney may permissibly guide the defense pursuant to the strategy she believes to be in the defendant's best interest. Presented with express statements of the client's will to maintain innocence, however, counsel may not steer the ship the other way." *Id*. at 1509. Wrongful concession of guilt by defense counsel is a structural error, and it thus, if established, requires reversal without being subject to harmless error review. *Id*. at 1511.

Defendant's argument is without merit because, contrary to his assertions, defense counsel did not concede defendant's guilt to CSC-III. He simply acknowledged the obvious: that the evidence was much stronger for CSC-III than it was for CSC-I. Defense counsel began his closing argument by imploring the jury "to look at count 5," the CSC-III charge, "because it's the only [one] that is *arguably* is [sic] supported by what you've heard over the last 24 hours." Later in the argument, defense counsel stated:

> And it appears by his voluntary statement to the police that he's relatively honest. Honest to the point that you all may well find him, find him guilty of count 5. But, that's all we are asking. If you are going to do that, I'm not asking you to do that, but if you do that, that's the only count that fits the fact.

Near the end of his closing argument, defense counsel again addressed the CSC-III charge, and he stated that the prosecution was required to prove beyond a reasonable doubt that "defendant engaged in a sexual act that involved entry into [MP's] genital opening by defendant's penis" and that MP was "13, 14, or 15 years old at the time of this act." Defense counsel continued:

> What's missing from that? That does not require you to find the force or coercion, which is convenient because you didn't hear any testimony regarding force or coercion. In fact, quite the opposite. You heard, I kind of went with it. She's very vague about how, how it occurred. Not very descriptive at all and admitted a lot of the times, she was in and a lot of the time, she was out. Can you use that beyond a reasonable doubt to find that it occurred? You can't. So, that

leaves you with what we used to call statutory rape, she was too young. I'm not encouraging you to find that. That's the facts, however.

Don't be so put off when hearing this that you disregard very closely at the elements. [sic] If you're going to hold him accountable, all we ask is that you hold him accountable for what it is the evidence, the evidence you heard and saw. Because the evidence shows that he didn't. Thank you.

Unlike *McCoy*, defense counsel never expressly conceded defendant's guilt. Indeed, while defense counsel did little to argue specifically against the CSC-III charge, he also explicitly stated multiple times that he was *not* conceding defendant's guilt. When viewed as a whole, it is clear that defense counsel's argument was that the jury should find defendant not guilty of all charges; however, recognizing the compelling evidence against defendant, defense counsel argued that if the jury believed the prosecution's evidence it should nonetheless find him guilty only of CSC-III. At no point did defense counsel say that defendant was guilty of CSC-III; rather, he stated that the CSC-III charge was "the only [one] that [was] *arguably* . . . supported" by the evidence. Defense counsel told the jury that it "*may well* find [defendant] . . . guilty" of CSC-III, but he also stated, "I'm not encouraging you to find that" and "I'm not asking you to do that." Defense counsel's use of words such as "if," "arguably," and "may well," paired with his insistence that he was not asking the jury to find defendant guilty in any capacity leads us to conclude that he did not concede defendant's guilt of CSC-III.

Even if we were to view counsel's arguments as a concession of guilt, defendant's argument would still be without merit because the record suggests that defendant did not take issue with counsel's strategy until after he was convicted and sentenced. In *McCoy*, the United States Supreme Court granted cert to answer "whether it is unconstitutional to allow defense counsel to concede guilt *over the defendant's intransigent and unambiguous objection.*" *McCoy*, 138 S Ct at 1507 (emphasis added). In this case, defendant's appeal marked the first indication that he did not approve of his counsel's strategy. Defendant did not object to the strategy at any time during the trial. Moreover, defendant was given the opportunity to address the court at sentencing and at no point did he use the opportunity to express any dissatisfaction with defense counsel's trial strategy. Indeed, even in the affidavit prepared by defendant's appellate counsel for his motion to remand defendant acknowledges that he never objected to the strategy, arguing instead that he simply did not know that defense counsel planned to make the concession. This comes in stark contrast with *McCoy*, in which "the defendant vociferously insisted that he did not engage in the charged acts and adamantly objected to any admission of guilt." *Id*. at 1505. If defense counsel had conceded the defendant's guilt, the fact that defendant did not unambiguously object distinguishes this case from *McCoy*.

Therefore, defendant's argument that his right to the assistance of counsel was violated is without merit.

### III. SENTENCING CHALLENGES

Defendant raises four challenges arising from his sentencing. First, defendant argues that the trial court improperly considered acquitted conduct because references to such conduct were included in his PSIR. Second, defendant argues that the inclusion of this information in the PSIR

-4-

resulted in a sentence based on inaccurate information. These arguments are without merit. Third, defendant's argument that the trial court improperly scored OVs 3, 4, 8, and 10 has been waived. Finally, defendant's argument that the trial court erred by requiring him to register as a sex offender is without merit.

## A. ACQUITTED CONDUCT

Defendant argues that information relating to the victim's allegations—as recounted in the agent's description of the events—should have be stricken from the PSIR and that because the information was not stricken he was sentenced based, in part, on acquitted conduct. We disagree.

This Court reviews constitutional issues, such as due-process challenges, de novo. *People v Benton*, 294 Mich App 191, 203; 817 NW2d 599 (2011). "[D]ue process is satisfied as long as the sentence is based on accurate information and the defendant has a reasonable opportunity at sentencing to challenge that information." *People v Williams*, 215 Mich App 234, 236; 544 NW2d 480 (1996).

An individual is guilty of CSC-III if he or she "engages in sexual penetration with an individual" who "is at least 13 years of age and under 16 years of age." *People v Lewis*, 302 Mich App 338, 346; 839 NW2d 37 (2013). See also MCL 750.520d(1)(a). In contrast, relevant to the charges in this case, an individual is guilty of CSC-I if he or she "(1) causes personal injury to the victim, (2) engages in sexual penetration with the victim, and (3) uses force or coercion to accomplish the sexual penetration." *People v Nickens*, 470 Mich 622, 629; 685 NW2d 657 (2004). As noted by defendant, the agent's description of the offense in the PSIR includes a summary of events related to the victim, specifically detailing the victim's disclosures to the police that defendant used force when he assaulted her. The PSIR clearly states, however, that defendant was only found guilty of the lesser charge of CSC-III and acquitted of CSC-I, which was the only charge filed against him that required a showing of force or coercion. See MCL 750.520b(1)(f); *Nickens*, 470 Mich at 629.

Defendant is correct that "a sentencing court may not rely even in part on acquitted conduct when imposing a sentence for the defendant's conviction." *People v Stokes*, 333 Mich App 304, 310; 963 NW2d 643 (2020). It does not follow, however, that information about acquitted conduct cannot appear in a detailed report of the history of the case in a PSIR. As explained by this Court:

> [A] sentencing court may review a PSIR containing information on acquitted conduct without violating *Beck*[3] so long as the court does not rely on the acquitted conduct when sentencing the defendant. *Beck* supports this conclusion. In *Beck*, our Supreme Court remanded for resentencing because the sentencing court unquestionably "relied" on acquitted conduct for its sentencing decision. A sentencing court that reviews a PSIR that merely contains information about acquitted conduct, however, does not necessarily rely on such information when sentencing a defendant. There must be some evidence in the record that the

---

[3] *People v Beck*, 504 Mich 605, 618; 939 NW2d 213 (2019).

sentencing court relied on such information to warrant finding a *Beck* violation. Had the sentencing court specifically referenced acquitted offenses as part of its sentencing rationale, a *Beck* violation would be apparent. But when PSIRs prepared by the Department of Corrections merely refer to an acquittal by a jury of offenses in a separate case, and the sentencing court does not refer to or expressly rely upon such acquitted offenses as part of its sentencing rationale, this Court cannot conclude that the sentencing court committed a *Beck* violation because such a conclusion would rest on speculation that acquitted conduct influenced the sentencing court's decision. [*Id.* at 311-312 (citation omitted).]

Under *Stokes*, information about the victim need not be stricken from the PSIR merely because it involves acquitted conduct.[4] See *id*. The record does not suggest that the sentencing court relied on the information related to the victim's statement that defendant used force. Absent some indication that the trial court improperly relied on this information, defendant cannot show error related to acquitted conduct. See *id*.

Therefore, defendant is not entitled to a remand to have the information related to the victim's allegation struck from the PSIR.

## B. INACCURATE INFORMATION

Defendant argues that the PSIR's inclusion of the victim's statement suggesting that defendant used force when he penetrated her should not have been included because it violated his right to a sentence based on accurate information. We disagree.

Defendant is correct that irrelevant or inaccurate information should not be included in the PSIR. See *People v Waclawski*, 286 Mich App 634, 690; 780 NW2d 321 (2009). However, the PSIR is an information-gathering tool, and its scope is "necessarily broad." *Morales v Mich Parole Bd*, 260 Mich App 29, 45-46; 676 NW2d 221 (2003). Under MCR 6.425(A)(1)(b), the PSIR must include "a complete description of the offense *and the circumstances surrounding it*." (Emphasis added.) Information regarding the investigation of an offense forms part of the circumstances surrounding an offense, and such information is not excludable merely because the investigation also involved other alleged criminal conduct. That is, as detailed in the PSIR, it was the victim's allegations that defendant had forcibly assaulted her that prompted an investigation by the police, and it was the police's investigation into her allegations that prompted defendant's own disclosure

---

[4] We note that the Michigan Supreme Court has ordered oral argument on the application in *People v Montez*, ___ Mich ___; 979 NW2d 334 (2022), and has directed the parties to brief the issue "whether references to acquitted conduct in the defendant's presentence investigation report (PSIR) violated his right not to be sentenced on the basis of conduct of which he was acquitted, as articulated in *People v Beck*, 504 Mich 605; 939 NW2d 213 (2019)." However, to the extent that this order raises a question about the continuing viability of *Stokes*, "a Supreme Court order granting leave to appeal does not diminish the precedential effect of a published opinion of the Court of Appeals." MCR 7.215(C)(2). Therefore, we remain bound by the guidelines articulated in *Stokes*.

that he sexually penetrated the victim. In this context, the police's investigation of the victim's allegations, which ultimately led to defendant's voluntary confession that he sexually penetrated a 14-year-old, formed part of the circumstances surrounding the CSC-III offense. In other words, while the jury apparently was not convinced beyond a reasonable doubt that force was used, it is undisputed that the victim initially alleged that force was used. The information was properly included in the broad scope of the PSIR under MCR 6.425(A)(1)(b).

Therefore, defendant's argument that he was denied his right to a sentence based on accurate information is without merit.

## C. OV SCORING

Defendant argues that he is entitled to resentencing because the trial court made sentencing guidelines scoring errors with regard to OVs 3, 4, 8, and 10. However, we conclude that defendant waived these challenges.

"[W]aiver is the intentional relinquishment or abandonment of a known right." *Carines*, 460 Mich at 763 n 7 (quotation marks and citation omitted). "When defense counsel clearly expresses satisfaction with a trial court's decision, counsel's action will be deemed to constitute a waiver." *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011). "A defendant may not waive objection to an issue before the trial court and then raise it as an error before this Court." *People v Fetterley*, 229 Mich App 511, 520; 583 NW2d 199 (1998). That is because the "waiver has extinguished any error." *Kowalski*, 489 Mich at 503 (quotation marks and citation omitted).

At the sentencing hearing, the trial court specifically asked defense counsel if there were any objections to the guidelines scoring. Defense counsel explained that he had discussed the sentencing guidelines with the assistant prosecutor, saying that he and the prosecutor "actually went over by email to get that all choreographed and done and we're in agreement on the scoring." Defense counsel waived any objection to the trial court's scoring of OVs 3, 4, 8, and 10 by affirmatively agreeing to the scoring. Accordingly, defendant is not entitled to relief in relation to this argument.

## D. SEX OFFENDER REGISTRATION REQUIREMENT

Finally, defendant argues that he is entitled to resentencing to remove the SORA registration requirement from the trial court's judgment of sentence because the trial court did not impose the requirement at his sentencing hearing. We disagree.

"The construction and application of SORA . . . presents a question of law that is reviewed de novo on appeal." *People v Anderson*, 284 Mich App 11, 13; 772 NW2d 792 (2009). The trial court's findings of fact at sentencing are reviewed for clear error, which "exists when the reviewing court is left with the definite and firm conviction that a mistake has been made." *Id*.

In this case, defendant was convicted of CSC-III, which is a Tier III "listed offense" under SORA. MCL 28.722(i), (v)(*iv*). Because defendant was convicted of a "tier III offense," he is considered a "[t]ier III offender." MCL 28.722(u)(*ii*). An individual "who is convicted of a listed

offense after October 1, 1995" is required to register as a sex offender. MCL 28.723(1)(a). A tier III sex offender must comply with the SORA registration requirements for life. MCL 28.725(13).

SORA establishes a specific procedure that must be followed when an individual is convicted of a listed offense. MCL 28.724(1) provides, "Registration of an individual under this act must proceed as provided in this section." MCL 28.724(5) describes the registration process:

> Subject to [MCL 28.723], an individual convicted of a listed offense in this state after October 1, 1995 and an individual who was previously convicted of a listed offense for which he or she was not required to register under this act, but who is convicted of any other felony on or after July 1, 2011, shall register before sentencing, entry of the order of disposition, or assignment to youthful trainee status for that listed offense or that other felony. The probation agent or the family division of circuit court shall give the individual the registration form after the individual is convicted, explain the duty to register and accept the completed registration for processing under [MCL 28.726]. The court shall not impose sentence, enter the order of disposition, or assign the individual to youthful trainee status, until it determines that the individual's registration was forwarded to the department as required under [MCL 28.726].

Nothing in the record suggests that the trial court did not adhere to SORA requirements pursuant to MCL 28.724(5) before it sentenced defendant. Various documents filed with the trial court and provided to defendant indicated that all of the charges filed against defendant, including his CSC-III conviction, required compliance with SORA. The PSIR also indicated that registration under SORA was required. Moreover, the PSIR further indicated that defendant did, in fact, register as a sex offender on October 14, 2021, and the Department of Corrections had received notice of his registration prior to drafting the PSIR. See MCL 28.724(5). Defendant stated at sentencing that he had reviewed the PSIR and that the only inaccuracy was his address. Defendant was afforded the opportunity to correct any and all inaccuracies in the PSIR at sentencing, and he did not indicate that the PSIR's indication that sex offender registration was required and that he successfully registered on October 14, 2021 was inaccurate. Absent a defendant's effective challenge to the accuracy of the factual information contained in the PSIR, the information is presumed accurate and the trial court is permitted to rely on it when it imposes a sentence. *People v Grant*, 455 Mich 221, 233-234; 565 NW2d 389, 395 (1997).

Therefore, the trial court's reliance on the information contained in the PSIR regarding defendant's sex offender registration status was permissible, and it properly adhered to SORA's procedural registration requirements.

Affirmed.

/s/ Michael F. Gadola
/s/ Sima G. Patel
/s/ Allie Greenleaf Maldonado