*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KENDELLE DAMARJHAE JOHNSON,

        Defendant-Appellant.

UNPUBLISHED
March 18, 2026
12:25 PM

No. 373571
Oakland Circuit Court
LC No. 2023-284051-FH

Before: RIORDAN, P.J., and O'BRIEN and YOUNG, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of intentional discharge of a firearm at a dwelling (firearm-discharge), MCL 750.234b; possession of a firearm during the commission of a felony (felony-firearm), third offense, MCL 750.227b; and two counts of felon in possession of a firearm (felon-in-possession), MCL 750.224f.[1]

Defendant was sentenced, as a fourth-offense habitual offender, MCL 769.12, to 5 to 30 years' imprisonment for the firearm-discharge conviction, 10 years' imprisonment for the felony-firearm conviction, and 4 to 30 years' imprisonment for each felon-in-possession conviction. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

This case involves a shooting at a townhouse in Pontiac, Michigan, in January 2023. Kevin Shelton lived at the townhouse with his two daughters, two of his brothers, and Kentrial Allen. On the day in question, Allen was in the upstairs bathroom when he heard multiple gunshots. Shelton and Allen observed bullet holes in the front windows of the house and the screen door, in a wall immediately inside the front door, and in the kitchen. Police officers recovered 18 nine-millimeter shell casings from the area around Shelton's house. Ty Branscum, an Oakland County Sheriff detective, watched the surveillance video footage from Shelton's house and took screenshots of

---

[1] Defendant was acquitted of a separate count of felony-firearm.

the video. These screenshots were admitted at trial and show a "silver SUV" driving eastbound past Shelton's house, then "coming back westbound past the house." A man wearing a black and gold coat appears to shoot at the house, then walk back toward the silver SUV, which was parked across the street from Shelton's house.

The silver SUV involved in the shooting was rented by Breanna McClellan. Additional investigation showed that the vehicle, a silver Toyota RAV4, drove past a license-plate camera, which was 1.8 miles from Shelton's house, about 18 minutes before the shooting. Further, defendant "was under supervision of a tether through Gratiot County[]" in January 2023. GPS tracking indicated that, at the time of the shooting, defendant was traveling "approximately 17 miles per hour[]" past the address across the street from Shelton's house.

The day after the shooting, police officers stopped the silver Toyota RAV4 outside McClellan's address. Defendant was driving the vehicle at the time and had a tether on his leg. Defendant said that he lived at McClellan's address. After police officers removed a female passenger, McClellan, from the car, they found a nine-millimeter pistol "in-between [sic] the seat and the center console." Officers also recovered a "black and tan Nike jacket" from the trunk of the car, which had a "black charging cable for a GPS ankle monitor" in the coat. Nathaniel Rogers, an Oakland County Sheriff detective, executed a search warrant at McClellan's address, and found a loaded nine-millimeter pistol on top of a "brown cardboard box[]" on a bedroom dresser. Behind the box was a wallet with defendant's driver's license and Social Security card.

Defendant was charged with firearm-discharge, two counts of felony-firearm, and two counts of felon-in-possession.[2] At the beginning of the first day of trial, the prosecutor indicated that a few days beforehand, she received a flash drive from the officer-in-charge with new material related to this case. Apparently, at least some of that material included "witnesses that are interviewed on bodycam." The prosecutor explained that she promptly disclosed this material to defense counsel, and she requested that the trial court adjourn trial so she could review the material to determine whether and to what extent, if at all, it was exculpatory or inculpatory. Defense counsel, on the other hand, requested that "we either proceed forward to trial with the evidence that was disclosed in November—which I'm happy to do—or that this matter be dismissed and it be with prejudice[.]" The trial court, over the prosecutor's strenuous objection, ruled that it would exclude all of the newly disclosed material and proceed to trial. The trial court and defense counsel then conducted voir dire of defendant, who acknowledged that the newly disclosed material could be exculpatory but that he wanted to proceed to trial that day without that material.

_____

[2] McClellan was charged as a codefendant with accessory after the fact to a felony, MCL 750.505, carrying a concealed weapon, MCL 750.227, two counts of felony-firearm, and two counts of felon-in-possession, and pleaded guilty to these charges before defendant's trial.

The jury convicted defendant of firearm-discharge, felony-firearm, and two counts of felon-in-possession, and acquitted him of another count of felony-firearm. The trial court sentenced defendant as stated above, and he now appeals.[3]

## II. SUFFICIENCY OF EVIDENCE—FIREARM DISCHARGE

Defendant argues there was insufficient evidence to sustain his firearm-discharge conviction because the prosecution did not show that defendant shot at Shelton's house. We disagree.

### A. STANDARD OF REVIEW

This Court reviews a defendant's challenge to the sufficiency of the evidence de novo. *People v Hawkins*, 245 Mich App 439, 457; 628 NW2d 105 (2001). "In determining whether sufficient evidence exists to sustain a conviction, this Court reviews the evidence in the light most favorable to the prosecution, and considers whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Harris*, 495 Mich 120, 126; 845 NW2d 477 (2014). This deferential standard requires the reviewing court to make all reasonable inferences in favor of sustaining the conviction. *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018). "The prosecution need not negate every reasonable theory of innocence; it need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant." *People v Kenny*, 332 Mich App 394, 403; 956 NW2d 562 (2020).

### B. DISCUSSION

The prosecution introduced sufficient evidence to sustain defendant's firearm-discharge conviction.

"[A]n individual who intentionally discharges a firearm at a facility that he or she knows or has reason to believe is a dwelling or occupied structure is guilty of a felony." *People v Wilson*, 230 Mich App 590, 592; 585 NW2d 24 (1998) (cleaned up). See also MCL 750.234b(1). In addition, "identity is an element of every offense." *People v Bass*, 317 Mich App 241, 263; 893 NW2d 140 (2016) (cleaned up). On appeal, defendant only challenges the identity element.

Screenshots of Shelton's surveillance video showed that a silver SUV drove near Shelton's house immediately before the shooting. A man wearing a black and gold coat exited the vehicle, shot at Shelton's house, and returned to the vehicle. Consistent with that vehicle and coat, defendant was driving a silver Toyota RAV4 vehicle when he was stopped the day after the shooting. A black and gold (or tan) coat, which contained a charging cable for a tether, was in the

---

[3] The trial court initially sentenced defendant to 5 to 30 years' imprisonment for the firearm-discharge conviction, 10 years' imprisonment for felony-firearm, and 4 to 30 years' imprisonment for each felon-in-possession conviction. However, the trial court mistakenly sentenced defendant for his acquitted felony-firearm charge, not the felony-firearm charge for which he actually was convicted. The trial court resentenced defendant only for his convictions, and defendant's sentences are not at issue on appeal.

trunk of the vehicle, and a nine-millimeter pistol was near the center console. Moreover, defendant was wearing a tether at the time of the shooting, and tether monitoring placed defendant in close proximity to Shelton's house at the time of the shooting. In addition, defendant told police officers that he lived at McClellan's address, and officers found a nine-millimeter handgun in a bedroom in McClellan's house. The shell casings outside Shelton's house came from a nine-millimeter firearm, i.e., the shell casings were consistent with the handguns found in the silver SUV that defendant was driving and his residence. These facts provide substantial, if not overwhelming, circumstantial evidence of defendant's identity as the shooter.

Defendant notes that there is no direct evidence identifying him as the perpetrator of the offense. However, circumstantial evidence can be sufficient to sustain a conviction, and it is the jury's role, not this Court's role, to determine what inferences may be fairly drawn from the evidence. *Oros*, 502 Mich at 239. The jury could reasonably infer from the circumstantial evidence that defendant was the person who shot at Shelton's house. Accordingly, the prosecution introduced sufficient evidence to sustain defendant's firearm-discharge conviction.

### III. DISCOVERY VIOLATION

Defendant next asserts that the trial court erroneously proceeded to trial despite acknowledging that his defense counsel recently received material that may have been exculpatory.[4] We conclude that this issue is waived because both defense counsel and defendant himself agreed to proceed to trial that day without that material being admissible for either the prosecution or defendant.

Ordinarily, "[w]e review a trial court's decision regarding the appropriate remedy for a discovery violation for an abuse of discretion." *People v Dickinson*, 321 Mich App 1, 17; 909 NW2d 24 (2017). A trial court abuses its discretion when it makes an error of law, or when its decision "falls outside the range of reasonable and principled outcomes." *People v Rogers*, 338 Mich App 312, 320; 979 NW2d 747 (2021).

Our Supreme Court defines waiver as "the intentional relinquishment or abandonment of a known right." *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011) (quotation marks and citation omitted). "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *Id*. (quotation marks and citation omitted). "When defense counsel clearly expresses satisfaction with a trial court's decision, counsel's action will be deemed to constitute a waiver." *Id*.

Here, defense counsel requested that the trial court either dismiss this case with prejudice or proceed to trial based only upon the material timely disclosed before the start of trial. Specifically, defense counsel stated he was "happy" to "proceed forward to trial with the evidence that was disclosed in November[.]" Further, not only did defense counsel affirmatively approve, and request, the trial court's decision, but defendant himself agreed to proceed to trial after he was subject to voir dire on the matter. Defendant acknowledged that the newly disclosed material

---

[4] Defendant does not clearly identify whether this issue is in the nature of a procedural discovery violation, a due-process violation, or implicates some other aspect of criminal procedure.

could be exculpatory, at least in part, but agreed with the trial court that he "want[ed] to proceed at this time knowing that the [newly disclosed] evidence will not be admitted[.]" Moreover, according to defense counsel, he and defendant previously discussed whether to proceed to trial, and they agreed to proceed. Thus, defendant has waived any error because both he and his counsel clearly approved the trial court's decision to proceed to trial without the newly disclosed material.

We acknowledge defendant's assertion on appeal that it was "unfair" for the trial court to ask him to proceed to trial that day without being certain about the contents of the newly disclosed material. In this regard, however, we briefly note the following. First, the trial court's ruling that it would proceed with trial that day to the exclusion of all newly disclosed material presumably was favorable to defendant, as this ruling was sought by defense counsel and strongly opposed by the prosecutor. In other words, the unstated assumption was that the newly disclosed material would predominantly be inculpatory, not exculpatory. Second, it is undisputed that defense counsel actually received the material for review a few days before trial. Yet, a couple of years later on appeal, defendant has not identified any material that would have aided his case, and there is no suggestion that the material was unavailable to appellate counsel for review. Thus, although we might conceivably have a basis to grant defendant relief regardless of his waiver if, hypothetically, he identified material on appeal that satisfies cases such as *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), or *Kyles v Whitley*, 514 US 419; 115 S Ct 1555; 131 L Ed 2d 490 (1995), he has not done so. Therefore, we cannot afford defendant relief for this issue. See *People v Schumacher*, 276 Mich App 165, 177; 740 NW2d 534 (2007) (noting that the defendant bears the burden of showing a *Brady* violation).

IV. CONCLUSION

For the reasons discussed above, we affirm.

/s/ Michael J. Riordan
/s/ Colleen A. O'Brien
/s/ Adrienne N. Young

-5-